HARCO NATIONAL INSURANCE COMPANY PLAINTIFF v. GRANT THORNTON LLP, DEFENDANT

No. COA09-996

(Filed 7 September 2010)

**1. Appeal and Error— interlocutory orders and appeals— choice of law determination—writ of certiorari granted**

Although defendant's appeal from the Business Court's choice of law determination was from an interlocutory order, the Court of Appeals granted defendant's petition for writ of certiorari to consider the merits of defendant's appeal, given the com-

plexities of the case and the importance of determining the choice of law to resolve the issues involved.

## 2. Conflicts of Law— choice of law test—Audit State test— lex loci test

The Business Court erred in a negligence and negligent misrepresentation case by determining the choice of law on the basis of its self-created Audit State test. The nature of the cause of action, not the occupation of the defendant, controls the determination of the applicable choice of law test. The Business Court was required to apply the *lex loci* test to plaintiff's tort claims under the prior holdings of our Supreme Court and the doctrine of *stare decisis*.

## 3. Appeal and Error— judgment entered under misapprehension of law—lex loci test

Although normally a judgment is vacated and remanded for further proceedings when the order or judgment appealed from was entered under a misapprehension of the applicable law, the Court of Appeals concluded it was appropriate to determine if the Business Court correctly concluded that Pennsylvania law would apply under the *lex loci* test. The Business Court's order indicated that under any test, it believed that Pennsylvania law would apply.

## 4. Civil Procedure— motion for summary judgment under Illinois law—lex loci test

The Business Court did not err by denying defendant's motion for summary judgment under Illinois law. Illinois law did not govern the case under the *lex loci* test.

## 5. Appeal and Error— preservation of issues—failure to argue

Additional assignments of error not addressed by defendant in its brief were deemed abandoned under N.C. R. App. P. 28(b)(6).

Appeal by defendant from order entered 20 April 2009 by Judge Ben F. Tennille in Wake County Superior Court. Heard in the Court of Appeals 10 March 2010.

**HARCO NAT'L INS. CO. v. GRANT THORNTON LLP**

[206 N.C. App. 687 (2010)]

*Ragsdale Liggett PLLC, by Mary Hulett, Ashley Huffstetler Campbell, and Amie C. Sivon, for plaintiff-appellee.*

*Yates, McLamb & Weyher, LLP, by Barbara B. Weyher and Thomas C. Younger, III; and Cohen & Grigsby, P.C., by Kerrin M. Kowach and Richard R. Nelson, II, pro hac vice, for defendant-appellant.*

CALABRIA, Judge.

Grant Thornton LLP ("defendant") appeals an order (1) resolving Harco National Insurance Company's ("plaintiff") Motion for Choice of Law Determination; and (2) denying defendant's motion for summary judgment. We affirm in part and reverse in part.

## I. Background

Plaintiff is an Illinois corporation which provides property and casualty insurance and reinsurance. In October 2002, plaintiff began negotiations to enter into a Program Administrator Agreement ("PAA") with Capital Bonding Corporation ("Capital Bonding"), a Pennsylvania corporation.[1] Under the proposed terms of the PAA, Capital Bonding would be appointed as plaintiff's agent to sell bail and immigration bonds in plaintiff's name in a number of states, including North Carolina. In exchange, Capital Bonding agreed to pay plaintiff a portion of the premiums generated by Capital Bonding's bond sales.

During the course of negotiations, two of plaintiff's executives visited Capital Bonding at their office in Pennsylvania. At plaintiff's request, Capital Bonding provided these executives with financial information that included Capital Bonding's balance sheet for the year 2000 and financial statements for the year 2001. Both items indicated that they had been audited by defendant, a Pennsylvania company. These audits were performed by defendant in Pennsylvania. The audit opinions were also delivered to Capital Bonding in Pennsylvania. Plaintiff claims that it relied upon these audit opinions to make its decision to enter into the PAA.

The PAA was executed on 1 January 2003. It provided that Capital Bonding would make payments to the courts when bonds issued in plaintiff's name were forfeited because bonded individuals failed to appear in court. However, plaintiff, as an insurance company,

---

1. Capital Bonding, which is now defunct, is not a party to this lawsuit.

remained ultimately liable to make these payments if Capital Bonding failed to do so. From 2003 to 2004, Capital Bonding issued, in plaintiff's name, hundreds of millions of dollars worth of bonds in thirty-eight states.

In 2004, Capital Bonding ceased making payments on forfeited bonds. As a result, plaintiff was required to pay all forfeited bonds that were still outstanding. On 13 January 2004, the North Carolina Department of Insurance seized more than $900,000 from plaintiff's North Carolina trust account located at Wachovia Bank in North Carolina in order to satisfy outstanding bond obligations. Ultimately, plaintiff paid more than $15,000,000 for forfeited bonds that had been issued by Capital Bonding in North Carolina. These payments, along with the payments due in thirty-seven other states, came from a variety of sources, and were primarily funded from plaintiff's corporate bank account in Illinois. However, none of these payments were made to any entity located in Illinois.

On 23 February 2005, plaintiff initiated an action against defendant in Wake County Superior Court, asserting claims for negligence and negligent misrepresentation. On 14 March 2006, the case was designated a complex business matter and assigned to the North Carolina Business Court ("the Business Court"). On 5 December 2008, plaintiff filed a Motion for Choice of Law Determination, arguing that North Carolina law should control the instant case. On 9 December 2008, defendant filed a response to plaintiff's motion and a motion for summary judgment, arguing that Illinois law should control and that defendant would be entitled to summary judgment under Illinois law. On 20 April 2009, the Business Court issued an Order and Opinion resolving the parties' respective motions. Under a choice of law test devised by the Business Court, referred to as the "Audit State test," the Business Court determined that Pennsylvania law applied. As a result, defendant's motion for summary judgment under Illinois law was denied. The Business Court's order noted that if Illinois law, rather than Pennsylvania law, had applied to the instant case, defendant would be entitled to summary judgment. From this order, defendant appeals.

## II. Interlocutory Appeal

[1] As an initial matter, we note that the Business Court's order is interlocutory and generally would not be subject to immediate appellate review. "An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires

further action by the trial court in order to finally determine the entire controversy." *N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995).

> An appeal from an interlocutory order is permissible only if the trial court certified the order under Rule 54(b) of the Rules of Civil Procedure, or (2) the order affects a substantial right that would be lost without immediate review. The burden rests on the appellant to establish the basis for an interlocutory appeal.

*Dailey v. Popma*, 191 N.C. App. 64, 67-68, 662 S.E.2d 12, 15 (2008) (internal quotations and citations omitted). There is no Rule 54(b) certification in the instant case, and therefore immediate appeal of the Business Court's order is only permitted if the order affects a substantial right.

The question of whether a choice of law determination affects a substantial right has not been previously addressed by our Courts. However, in *United Virginia Bank v. Air-Lift Assoc.*, this Court, without conducting a substantial right analysis, issued a writ of certiorari to hear an interlocutory appeal that primarily involved a choice of law determination. 79 N.C. App. 315, 319, 339 S.E.2d 90, 92 (1986). Furthermore, in *Stetser v. TAP Pharm. Prods., Inc.*, this Court, after determining that no substantial right was affected,[2] issued a writ of certiorari to review an interlocutory order that also involved a choice of law determination. 165 N.C. App. 1, 12, 598 S.E.2d 570, 579 (2004).

"The writ of certiorari may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when . . . no right of appeal from an interlocutory order exists[.]" N.C.R. App. P. 21(a)(1) (2008). In the instant case, defendant filed, in the alternative, a petition for a writ of certiorari. Without considering whether defendant's appeal affects a substantial right, we determine that, as in *United Virginia Bank* and *Stetser*, granting this petition would be appropriate. Given the complexities of the instant case and the importance of determining the choice of law to resolve the issues involved, "the administration of justice will best be served by granting defendant['s] petition." *Reid v. Cole*, 187 N.C. App. 261, 264, 652 S.E.2d 718, 720 (2007). Defendant's petition for writ of certiorari is granted, and we consider the merits of defendant's appeal.

---

2. The appellants in *Stetser* did not argue that the choice of law determination affected a substantial right.

## III. Choice of Law

[2] The parties both argue that the Business Court erred by determining the choice of law on the basis of the "Audit State test." We agree.

The Business Court's order initially discussed the differing standards of accountant liability in three jurisdictions: Illinois, North Carolina, and Pennsylvania. Then, in order to determine which of the three states' law applied to the instant case, the Business Court examined the nature of accountant liability and its interplay with tort and warranty claims. The Business Court noted that our Courts have applied different conflict of law rules for tort and warranty claims.

Our Supreme Court has made clear that lex loci delicti ("lex loci") is the appropriate choice of law test to apply to tort claims.

> Our traditional conflict of laws rule is that matters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum. For actions sounding in tort, the state where the injury occurred is considered the situs of the claim. Thus, under North Carolina law, when the injury giving rise to a negligence or strict liability claim occurs in another state, the law of that state governs resolution of the substantive issues in the controversy.

*Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988) (internal citations omitted). Our Courts have "consistently adhered to the lex loci rule in tort actions." *Id.*

However, our Supreme Court has also made clear that lex loci does not apply to warranty claims, because "actions for breach of implied warranty are now governed by the Uniform Commercial Code, adopted in North Carolina in 1965 as chapter 25 of the General Statutes." *Id.* at 336, 368 S.E.2d at 854. Instead, the choice of law that applies to warranty claims is determined by the most significant relationship test, "which requires the forum to determine which state has the most significant relationship to the case." *Id.* at 338, 368 S.E.2d at 855.

The Business Court determined that third party claims against an accountant should be specially categorized, because "[a]lthough the third party claims are generally couched in tort terms of negligence or negligent misrepresentation, they are strongly analogous to contract

breach of warranty claims." As a result, the Business Court created a new choice of law test, to be applied only in auditor liability cases: "The law of the state where an audit is performed, delivered, and disseminated (the "Audit State") should control the scope of liability to third parties not in privity with an accountant." The Business Court referred to this test in its order as the "Audit State test."

The Business Court's Audit State test seems to be the only such test of its kind. Our research has not revealed a single case in any jurisdiction that purports to utilize such a test for the purpose of determining the choice of law in an auditor liability case. As the Business Court's order acknowledges, claims for negligence and negligent misrepresentation are claims sounding in tort. It is the nature of the cause of action, not the occupation of a defendant, that controls the determination of the applicable choice of law test. While the Business Court expressed concern that "[u]sing the law of the state where the injury occurred is problematic[,]" it was required to apply the lex loci test to plaintiff's tort claims pursuant to the prior holdings of our Supreme Court and the doctrine of stare decisis.

> It is, then, an established rule to abide by former precedents, *stare decisis*, where the same points come up again in litigation, as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion, as also because, the law in that case being solemnly declared and determined what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or swerve from according to his private sentiments; he being sworn to determine, not according to his private judgment, but according to the known laws and customs of the land—not delegated to pronounce a new law, but to maintain and expound the old one—*jus dicere et non jus dare.*

*McGill v. Town of Lumberton*, 218 N.C. 586, 591, 11 S.E.2d 873, 876 (1940) (internal quotations and citations omitted). Thus, we determine that the Business Court erred by resolving plaintiff's choice of law motion by ignoring the precedent of our Supreme Court in *Boudreau* and utilizing instead its self-created Audit State test.

### IV. Application of Lex Loci

[3] Normally, "[w]hen the order or judgment appealed from was entered under a misapprehension of the applicable law, the judgment, including the findings of fact and conclusions of law on which the

judgment was based, will be vacated and the case remanded for further proceedings." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 469, 597 S.E.2d 674, 693 (2004) (internal quotations and citation omitted). However, in the instant case, the Business Court's order also indicated that, under any test, including the lex loci test, it believed that Pennsylvania law would apply. The Business Court's order concluded that "[t]his Court believes that whether a 'significant relationship' or a 'place of injury' test is applied, Pennsylvania law should apply in this case." Therefore, it is appropriate for this Court to determine if the Business Court correctly concluded that Pennsylvania law would apply under the lex loci test.

### A. Standard of Review

A trial court's application of North Carolina's conflict of law rules is a legal conclusion, which this Court reviews *de novo. Stetser*, 165 N.C. App. at 14, 598 S.E.2d at 579. "[F]or the causes of action that are normally considered to be torts . . . the law of the state where the plaintiff was injured controls the outcome of the claim." *Id.* at 14-15, 598 S.E.2d at 580. The plaintiff's injury is considered to be sustained in the state "where the last act occurred giving rise to [the] injury." *United Virginia Bank*, 79 N.C. App. at 321, 339 S.E.2d at 94. Thus, in order to determine which state's law applies to plaintiff's tort claims in the instant case, we must determine the state where plaintiff was injured.

### B. The Business Court's Analysis

The Business Court determined that plaintiff suffered its harm in Pennsylvania based upon the following analysis:

In the circumstances of this case, the place of injury can be approached in many different ways. It is undisputed that the audit was performed, delivered, and disseminated in Pennsylvania. The work was done by Pennsylvania auditors for a Pennsylvania company. If the audit done for CBC was defective, the negligent act giving rise to all claims was the delivery of the audit to CBC. The heart of Harco's claim is that it was induced into entering into the fronting agreement with CBC by the allegedly defective audit. It is certainly arguable and entirely plausible that the injury occurred when the "fronting" agreement was entered into, not when Harco honored its obligations under the bonds. Harco was injured when it entered into the contract that required it to pay on bonds in the future. The money it paid out on the bonds was the

result of its entering into the Pennsylvania law governed contract. The final payments were made through CBC even though it was not CBC's money that was lost. Harco officials went to Pennsylvania to do their due diligence. They got the allegedly defective information there, and that allegedly caused them to enter into the "fronting" agreement.

In reaching this conclusion, the Business Court misapplied the lex loci test.

In jurisdictions which apply the rule of lex loci delicti, an issue may arise as to whether the law of the state where an allegedly wrongful act or omission took place or that of the state where the injury or other harm was sustained should apply. In such a case, the place of the tort generally is considered to be the state where the injury or harm was sustained or suffered, and as a general rule, a victim should recover under the system in place where the injury occurred. That is, the situs of the tort ordinarily is the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place, and the substantive law of such state applies.

16 Am. Jur. 2d *Conflict of Laws* § 109 (2009); *see also Jefferson-Pilot Life Ins. Co. v. Spencer*, 336 N.C. 49, 56, 442 S.E.2d 316, 320 (1994) ("[A]n action for negligent misrepresentation . . . does not accrue before the misrepresentation is discovered, neither does it accrue until the misrepresentation has caused claimant harm.").

The Business Court incorrectly applied the lex loci test when it focused its injury analysis on where the alleged negligent misrepresentations took place. Since plaintiff had not yet sustained any injury, it had no cause of action when defendant provided the allegedly defective audit to Capital Bonding. Additionally, plaintiff had not sustained any injury when it entered into the "fronting" agreement with Capital Bonding on the basis of that audit. Since the Business Court failed to examine where plaintiff's loss was actually sustained and focused instead on where the alleged negligent misrepresentations were made, we hold that the Business Court erred by determining that because defendant's alleged negligent misrepresentations took place in Pennsylvania, Pennsylvania law would apply under the lex loci test.

## C. Determination of the Place of Harm

Our Courts have not previously applied the lex loci test to either negligence or negligent misrepresentation claims in the context of a business transaction. However, this Court has previously applied the lex loci test to determine the place where a business suffered its injury in actions for unfair or deceptive trade practices.

In *Lloyd v. Carnation Co.*, this Court held that the plaintiff, a North Carolina bull semen distributor, suffered injury in Virginia (and thus Virginia law applied) when the defendants deprived plaintiff of exclusive distribution in Virginia. 61 N.C. App. 381, 387-88, 301 S.E.2d 414, 418 (1983). In *United Virginia Bank*, this Court held that Virginia law applied to a counterclaim where the defendants alleged that the plaintiff committed an unfair trade practice by representing to the defendants that they had a buyer who would pay $150,000 for an airplane and the plane was instead sold in Virginia for the sum of $55,000. 79 N.C. App. at 321, 339 S.E.2d at 94. These cases indicate that, at a minimum, it is necessary for a North Carolina court, applying the lex loci test, to make some attempt to determine the state in which the injured party actually suffered its harm.

Without acknowledging either *Lloyd* or *United Virginia Bank*, defendant encourages this Court to consider the question of where plaintiff suffered its injury in its broadest sense, by arguing that plaintiff suffered injury at its principal place of business, located in Illinois, because plaintiff felt the economic impact of its damages there. Plaintiff cites a string of cases, including several North Carolina federal cases, that provide persuasive authority for this proposition. *See, e.g., ITCO Corp. v. Michelin Tire Corp.*, 722 F.2d 42, 49 n.11 (4th Cir. 1983) ("[I]njuries sustained by ITCO, a North Carolina corporation with its principal place of business in North Carolina, were sustained in the state of North Carolina."); *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 554, 555 (M.D.N.C. 1999) ("Other federal courts that have examined the application of the lex loci delicti rule to fraud claims consistently have concluded that the state where the injury occurred in a fraud claim is the state in which the plaintiff suffered the economic impact[,]" i.e. its principal place of business.); *Madison River Mgmt. Co. v. Business Mgmt. Software Corp.*, 387 F. Supp. 2d 521, 532 (M.D.N.C. 2005) ("[I]t is clear that Colorado law governs . . . because Defendant suffered any injury as a result of alleged misrepresentations in Colorado, its principal place of business.").

However, none of the cases cited by defendant attempt to reconcile this apparent bright line "place of business" rule with the choice of law analyses conducted by this Court in *Lloyd* and *United Virginia Bank*. *United Virginia Bank* is not cited by any of the cases relied upon by defendant,[3] and only one case, *ITCO Corp.*, mentions *Lloyd*. 722 F.2d at 49 n.11. But even *ITCO Corp.* only mentions *Lloyd* for the proposition that the "law of the state where the injuries are sustained should govern" an unfair and deceptive trade practices claim; it does not rely on *Lloyd* to determine where the plaintiff actually suffered its injuries. *Id.* Moreover, two additional North Carolina federal cases make clear that there is not a universal consensus regarding defendant's proposed bright line rule. In *Santana, Inc. v. Levi Strauss & Co.*, the Court held that California law would apply under the lex loci test where the injury alleged by the plaintiff, a Missouri corporation with an office in North Carolina, was invoice deductions made by the defendant in California as a result of a dispute over the quality of fabric supplied by the defendant. 674 F.2d 269, 273 (4th Cir. 1982). Furthermore, in *United Dominion Indus. v. Overhead Door Corp.*, the Court specifically rejected "a bright line rule that in all cases an injury is sustained where corporate headquarters are located." 762 F. Supp. 126, 130 (W.D.N.C. 1991). Instead, the Court, relying heavily on *United Virginia Bank*, applied Texas law to a dispute over an asset purchase when the defendant conveyed the assets and the North Carolina plaintiff delivered its money for the assets in Texas. *Id.*

We find the reasoning in *United Dominion Indus.* persuasive and join that Court in rejecting defendant's proposed bright line rule. The location of a plaintiff's residence or place of business may be useful for determining the place of a plaintiff's injury in those rare cases where, even after a rigorous analysis, the place of injury is difficult or impossible to discern. However, as the examples of *Lloyd* and *United Virginia Bank* indicate, a significant number of cases exist where a plaintiff has clearly suffered its pecuniary loss in a particular state, irrespective of that plaintiff's residence or principal place of business. In those cases, the lex loci test requires application of the law of the state where the plaintiff has actually suffered harm. Therefore, it must be determined whether the record in the instant case sufficiently indicates the state where plaintiff suffered the injury that gave rise to its claims.

3. *ITCO Corp.* was decided prior to this Court's decision in *United Virginia Bank.*

Defendant argues that, if plaintiff was injured in a state other than Illinois, then plaintiff first suffered an injury when it paid "licensing fees issued to states other than North Carolina" prior to 13 January 2004, since those fees were part of plaintiff's claimed damages. Defendant additionally contends that the record makes it impossible to determine where plaintiff first paid these licensing fees. However, although plaintiff initially paid these fees on behalf of Capital Bonding, nothing in the record indicates that it submitted these fees to Capital Bonding for reimbursement before plaintiff's funds were seized by the North Carolina Department of Insurance. Plaintiff could not have suffered an injury and thus, could not have had any cognizable causes of action until after it had unsuccessfully requested the repayment of these fees. *See Pierson v. Buyher*, 330 N.C. 182, 186, 409 S.E.2d 903, 906 (1991) (Holding that a cause of action does not accrue on the mere possibility of an injury).

Instead, plaintiff's causes of action accrued when the North Carolina Department of Insurance seized plaintiff's funds that were held in a North Carolina trust account by a North Carolina bank on 13 January 2004. At that time, plaintiff involuntarily parted with tangible property located in North Carolina, constituting the injury necessary to create causes of action against defendant for negligence and negligent misrepresentation. While both the Business Court's order and defendant's brief seem to characterize the seizure of plaintiff's trust account funds as plaintiff's funds being *received* in North Carolina, it is the location of the funds in North Carolina at the time of the seizure and not the location where the funds were received that is dispositive. Plaintiff's funds were clearly located in North Carolina at the time they were seized and, as a result, we hold that plaintiff suffered the injury necessary to give rise to its negligence and negligent misrepresentation claims in North Carolina. Therefore, North Carolina law governs plaintiff's claims under the lex loci test.

## V. Summary Judgment

[4] Defendant argues that the trial court erred by denying its motion for summary judgment under Illinois law. Since Illinois law does not govern the instant case under the lex loci test, the Business Court correctly denied defendant's motion. This assignment of error is overruled.

## VI. Conclusion

**[5]** The record on appeal includes additional assignments of error not addressed by defendant in its brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6) (2008), we deem these assignments of error abandoned and need not address them.

The Business Court improperly ignored the precedent of our Supreme Court when it created the Audit State test to determine that Pennsylvania law governs the instant case, and we reverse that portion of the Business Court's order. Under a proper application of the lex loci test, North Carolina law governs the instant case, because plaintiff suffered the harm necessary to give rise to its causes of action when the North Carolina Department of Insurance seized plaintiff's funds located in its North Carolina bank account. This disposition makes it unnecessary to address plaintiff's cross-assignment of error that there is no conflict between the laws of Pennsylvania and North Carolina.

Since North Carolina law governs the instant case, the Business Court's denial of defendant's motion for summary judgment under Illinois law is affirmed. This disposition makes it unnecessary to address plaintiff's cross-assignments of error regarding the Business Court's interpretation of Illinois law.

Affirmed in part and reversed in part.

Judges HUNTER, Robert C. and STEELMAN concur.