Camacho v. McCallum, 2016 NCBC 79.

STATE OF NORTH CAROLINA

GASTON COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 602

SUSAN CAMACHO individually, and
in her capacity as Administrator
C.T.A. of the Estate of Kerry Lee
McCallum, deceased, and on behalf of
JOAN FABRICS, LLC,

       Plaintiffs,

    v.

ELKIN MCCALLUM and JOAN
FABRICS, LLC,

       Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION**

1.     **THIS MATTER** is before the Court on Plaintiff Susan Camacho's ("Plaintiff" or "Camacho") Motion for Appointment of Receiver (the "Motion for a Receiver") and Defendants Elkin McCallum and Joan Fabrics, LLC's (collectively, "Defendants") Motion to Dismiss Plaintiff's Complaint (the "Motion to Dismiss"). After considering the Motion for a Receiver and the Motion to Dismiss (collectively, the "Motions"), supporting and opposing briefs, and arguments of counsel at a hearing on the Motions, for the reasons set forth below the Court hereby **GRANTS** Defendants' Motion to Dismiss and **DENIES** Plaintiff's Motion for a Receiver.

> *Hickmon & Perrin, P.C., by James Hickmon, and Fitzgerald Litigation, by Andrew Fitzgerald, for Plaintiff Susan Camacho.*

> *Patrick, Harper & Dixon, LLP, by Michael J. Barnett, for Defendants Elkin McCallum and Joan Fabrics, LLC.*

Robinson, Judge.

# I. PROCEDURAL HISTORY

2. Plaintiff commenced this action in her individual capacity, in her capacity as the personal representative of the Estate of Kerry McCallum ("Kerry's Estate"), and on behalf of Joan Fabrics, LLC ("Joan") on February 18, 2016 by filing her Complaint, Motion to Review Corporate Books and Records, and Motion for Appointment of Receiver ("Complaint"). In addition to the Motion for a Receiver, the Complaint brings the following direct claims: (1) an accounting and inspection of books and records claim (the "Inspection Claim"); (2) a judicial dissolution claim; and (3) a breach of fiduciary duty claim (collectively, the "Claims"). (Compl. ¶¶ 22, 25, 33.) Plaintiff also asserts the Claims derivatively on behalf of Joan. (Compl. 5.)

3. The case was designated as a mandatory complex business case pursuant to N.C. Gen. Stat. § 7A-45.4(b) by order of the Chief Justice of the North Carolina Supreme Court dated February 19, 2016, and was assigned to the Honorable Louis A. Bledsoe, III, by order dated February 24, 2016. The case was later reassigned to the undersigned by order dated July 5, 2016.

4. On March 17, 2016, Defendants filed the Motion to Dismiss. The Motion to Dismiss seeks dismissal of the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)").

5. After briefing on the Motions was completed, the Court held a hearing on the Motions on June 1, 2016. At the hearing, the parties agreed to a temporary stay to allow for limited production of documents and initial mediation. The Court entered a Scheduling Order on June 10, 2016, staying the case to and including August 1,

2016. In the Scheduling Order, the Court ordered that Defendants produce records no later than June 15, 2016, that the parties engage in an initial mediation session no later than August 1, 2016, and that the parties submit a status report to the Court within ten days of the initial mediation, but no later than August 1, 2016.

6. On July 26, 2016, the parties submitted a Status Report to the Court. The Status Report states that the parties conducted mediation on July 18, 2016, which resulted in an impasse, and the parties would like the Court to proceed with ruling on the Motions.

## II. FACTUAL BACKGROUND

7. Joan is a Delaware limited liability company ("LLC") with its principal place of business in Massachusetts. (Compl. ¶ 3.)

8. Defendant Elkin McCallum ("Elkin") is a member of Joan and Joan's President and Chief Executive Officer ("CEO"). (Compl. ¶¶ 4–5.) Elkin owns a 50% interest in Joan. (Compl. ¶ 4.)

9. Donna McCallum ("Donna")—who is not a party to this action—is a member of Joan, a 25% interest owner, and the wife of Elkin. (Compl. ¶¶ 4, 6.)

10. Kerry McCallum ("Kerry") was the daughter of Elkin and Donna. (Compl. ¶ 4.) Kerry died on October 31, 2014. (Compl. ¶ 2.) Prior to her death, Kerry was a member of Joan, the Vice President of Joan, and a 25% interest owner. (Compl. ¶¶ 2, 9.)

11. Kerry's Estate owns a 25% interest in Joan. (Compl. ¶ 2.) Camacho is the personal representative of Kerry's Estate and was legally married to Kerry. (Compl.

¶¶ 1, 9.) Camacho individually inherited Kerry's 25% ownership interest, and Defendants have ignored Plaintiff's requests to assign the Estate's ownership interest to Camacho individually. (Compl. ¶ 2.)

12. Plaintiff alleges that there have been questions regarding Joan's management for many years. (Compl. ¶ 10.) In 2007, Joan filed for bankruptcy protection and, around the same time, Elkin was the subject of a complaint filed by the Securities and Exchange Commission. (Compl. ¶ 10.)

13. Plaintiff alleges that Elkin has told Donna that Donna must always vote in agreement with Elkin, and Donna has never dissented from action taken by Elkin. (Compl. ¶ 6.) As a result, Plaintiff contends that Donna and Elkin, who together own 75% of Joan, make a majority voting bloc that owes a fiduciary duty to Plaintiff, the minority member. (Compl. ¶¶ 6, 32–34.)

14. Plaintiff, through a series of letters and emails and an estate proceeding, sought information on Joan pursuant to the Joan Fabrics LLC Operating Agreement (the "Operating Agreement") and Delaware law. (Compl. ¶¶ 12–14, Exs. 2–6.) The Operating Agreement contains a Delaware choice-of-law provision (Compl. Ex. 1 ¶ 11(c) [hereinafter Op. Agmt.]) and the following provision providing members with inspection rights:

> The Members shall keep or cause to be kept complete and accurate books and records of the LLC . . . . Such books and records shall be maintained and be available, in addition to any documents and information required to be furnished to the Members under the [Delaware Limited Liability Company] Act, at an office of the LLC for examination and copying by any Member, or his duly authorized representative, at his reasonable request and at his expense during ordinary business hours.

(Op. Agmt. ¶ 9(a).)  Plaintiff alleges that Joan is in financial distress, Plaintiff is entitled to the information requested, and Defendants have refused to provide such information.  (Compl. ¶¶ 19, 34.)

15.    Plaintiff has attempted to call a members meeting, but Elkin will not and/or cannot, due to health issues, have a members meeting.  (Compl. ¶ 17.)  Elkin scheduled a members meeting on two separate occasions and cancelled both meetings.  (Compl. ¶ 17.)

16.    Elkin has threatened to make a capital call on Plaintiff, which Plaintiff alleges is not permitted by the Operating Agreement.  (Compl. ¶ 16.)

## III.    LEGAL STANDARD

17.    In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations of the Complaint in the light most favorable to Plaintiff.  The Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory."  *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).  The Court construes the Complaint liberally and accepts all allegations as true.  *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

18.    Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim."  *Oates v. JAG,*

*Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

19. A court shall dismiss the action when it appears that the court lacks subject matter jurisdiction. N.C. R. Civ. P. 12(h)(3). "A motion to dismiss for lack of subject matter jurisdiction is not viewed in the same manner as a motion to dismiss for failure to state a claim upon which relief can be granted." *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978). A court may consider matters outside the pleadings in determining whether subject matter jurisdiction exists. *Keith v. Wallerich*, 201 N.C. App. 550, 554, 687 S.E.2d 299, 302 (2009); *Tart*, 38 N.C. App. at 502, 248 S.E.2d at 737.

## IV. MOTION TO DISMISS

### A. Inspection Claim

20. Plaintiff brings her Inspection Claim pursuant to N.C. Gen. Stat. § 57D-3-04 and Del. Code Ann. tit. 6, § 18-305, in which she demands a full accounting and seeks to inspect all records of Joan available under those statutes and the Operating Agreement. (Compl. ¶ 22.)

21. The parties agree that because Joan is an LLC organized under the laws of Delaware and the Operating Agreement contains a Delaware choice-of-law provision, Delaware law governs the Inspection Claim. (Joint Case Mgmt. Report 2); Del. Code

Ann. tit. 6, § 18-1101(i) (2015) ("A limited liability company agreement that provides for the application of Delaware law shall be governed by and construed under the laws of the State of Delaware in accordance with its terms."); *see also id.* § 18-305(a) (providing inspection rights to members of a "limited liability company"); *id.* § 18-101(6) (defining "limited liability company" as "a limited liability company formed under the laws of the State of Delaware").

22.     To the extent Plaintiff purports to bring her Inspection Claim pursuant to section 57D-3-04 of the North Carolina Limited Liability Company Act (the "North Carolina Act"), the Inspection Claim must be dismissed for failure to state a claim upon which relief can be granted.  Delaware law governs the Inspection Claim, and section 57D-3-04 applies only to members of an LLC formed under the North Carolina Act.  N.C. Gen. Stat. § 57D-1-02(a) (2015) ("[The North Carolina Limited Liability Company Act] and any other applicable laws of this State govern (i) the internal affairs of every *LLC*, including the interpretation, construction, and enforcement of operating agreements and determining the rights and duties of interest owners . . . ." (emphasis added)); *id.* § 57D-1-03(13), (19) (defining "LLC" as an entity formed under the North Carolina Act and a "foreign LLC" as a limited liability company organized under the law of another state); *id.* § 57D-3-04(a) (providing inspection rights to members of an LLC, as opposed to a foreign LLC).  Therefore, section 57D-3-04 does not provide Plaintiff, a member of a Delaware LLC, with inspection rights.

23.     Under section 18-305(a) of the Delaware Limited Liability Company Act (the "Delaware Act"), a member of a Delaware LLC "has the right, subject to such

reasonable standards (including standards governing what information and documents are to be furnished at what time and location and at whose expense) as may be set forth in a[n LLC] agreement or otherwise . . . to obtain from the [LLC]" certain information regarding the LLC.  Del. Code Ann. tit. 6, § 18-305(a).

24.     Section 18-305 is explicit that an action under that section must be brought in the Court of Chancery and the Court of Chancery has exclusive jurisdiction to determine whether the member is entitled to the information requested.  "Any action to enforce any right arising under [section 18-305] shall be brought in the Court of Chancery. . . . The Court of Chancery is hereby vested with *exclusive jurisdiction* to determine whether or not the person seeking such information is entitled to the information sought."  *Id.* § 18-305(f) (emphasis added); *see also Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 292 (Del. 1999) ("In vesting the Court of Chancery with jurisdiction, the [Delaware Act] accomplished at least three purposes: (1) it assured that the Court of Chancery has jurisdiction it might not otherwise have . . . ; (2) it established the Court of Chancery as the default forum in the event the members did not provide another choice of forum or dispute resolution mechanism; and (3) it tends to center interpretive litigation in Delaware courts with the expectation of uniformity.").

25.     Here, Plaintiff seeks to inspect Joan's records pursuant to section 18-305 and the Operating Agreement.  Thus, the Inspection Claim is "any action to enforce any right arising under [section 18-305]" and must therefore be brought in the Court of Chancery, which has exclusive jurisdiction to determine whether Plaintiff is

entitled to the requested information. Del. Code Ann. tit. 6, § 18-305(f). As a result, the Inspection Claim must be dismissed for lack of subject matter jurisdiction.

B.    Judicial Dissolution

26.    Plaintiff seeks judicial dissolution of Joan pursuant to N.C. Gen. Stat. § 57D-6-02 and Del. Code Ann. tit. 6, § 18-802. (Compl. ¶ 25.) Plaintiff alleges that "it is not practicable to conduct [Joan's] business in conformance with the operating agreement and the Delaware and North Carolina Limited Liability [Company] Acts and liquidation of [Joan] is necessary to protect the rights and interests of the member." (Compl. ¶ 25.)

27.    The parties agree that because Joan is a Delaware LLC and the Operating Agreement contains a Delaware choice-of-law provision, Delaware law governs the judicial dissolution claim. (Joint Case Mgmt. Report 2); Del. Code Ann. tit. 6, § 18-802 (providing for judicial dissolution of a "limited liability company" when "it is not reasonably practicable to carry on the business in conformity with a limited liability company agreement"); *id.* § 18-101(6) (defining "limited liability company" as "a limited liability company formed under the laws of the State of Delaware"); *id.* § 18-1101(i) ("A limited liability company agreement that provides for the application of Delaware law shall be governed by and construed under the laws of the State of Delaware in accordance with its terms.").

28.    To the extent Plaintiff purports to bring the judicial dissolution claim pursuant to N.C. Gen. Stat. § 57D-6-02, the claim must be dismissed for failure to state a claim upon which relief can be granted. Delaware law governs the judicial

dissolution claim, and section 57D-6-02 applies only to an LLC formed under the North Carolina Act. N.C. Gen. Stat. § 57D-1-03(13), (19) (defining "LLC" as an entity formed under the North Carolina Limited Liability Company Act and a "foreign LLC" as a limited liability company organized under the law of another state); *id.* § 57D-6-01 (providing that an LLC, as opposed to a foreign LLC, is dissolved upon a decree of judicial dissolution under section 57D-6-05); *id.* § 57D-6-02 (providing the grounds on which "[t]he superior court may dissolve an LLC[,]" as opposed to a foreign LLC); *id.* § 57D-6-05(a) (providing that the court "may enter a decree dissolving the LLC[,]" as opposed to a foreign LLC).

29. Under section 18-802 of the Delaware Act, "the *Court of Chancery* may decree dissolution of a [Delaware] limited liability company whenever it is not practicable to carry on the business in conformity with a limited liability company agreement." Del. Code Ann. tit. 6, § 18-802 (emphasis added). Unlike other provisions of the Delaware Act that provide an action may be brought in the Court of Chancery, thereby implying that those actions may be brought in courts other than the Court of Chancery, the plain language of section 18-802 permits only the Court of Chancery to enter a decree dissolving a Delaware LLC. *Compare id.* § 18-111 ("Any action to interpret, apply or enforce the provisions of a limited liability company agreement . . . may be brought in the Court of Chancery."), *and id.* § 18-1001 (stating that a member of an LLC "may bring [a derivative] action in the Court of Chancery"), *with id.* § 18-802 (stating "the Court of Chancery may decree dissolution"). *See also In re Raharney Capital, LLC v. Capital Stack LLC*, 25 N.Y.S.3d 217, 217–18 (N.Y.

App. Div. 2016) (holding that New York courts do not have subject matter jurisdiction to judicially dissolve a Delaware LLC); *Intertrust GCN, LP v. Interstate Gen. Media, LLC*, No. 99, 2014 Phila. Ct. Com. Pl. LEXIS 434, at \*7 (Phila. Ct. Com. Pl. Feb. 11, 2014) (stating that the language of section 18-802 "grants exclusive subject [matter] jurisdiction to the Delaware Court of Chancery to hear and determine petitions for judicial dissolution"); *Casella Waste Sys., Inc. v. GR Tech., Inc.*, No. 409-6-07, 2009 Vt. Super. LEXIS 14, at \*7–8 (Vt. Super. Ct. Feb. 6, 2009) ("[A] plain reading of [section 18-802] suggests that the default rules governing dissolution grant subject matter jurisdiction only to the Delaware Court of Chancery, and not to any other court.").

30.     Moreover, the Delaware statute's limited grant of authority to the Court of Chancery to judicially dissolve a Delaware LLC is consistent with the underlying principles and structure of an LLC.  The Delaware Act enables the formation of an LLC and affords members substantial freedom to contract among themselves regarding various issues, such as management of the LLC, the rights and duties of managers and members, admission of new members, and termination of the LLC. The Delaware Act provides default provisions only where the parties have not otherwise agreed.  Del. Code Ann. tit. 6, § 18-1101(b) ("It is the policy of [the Delaware Act] to give the maximum effect to the principle of freedom of contract and to the enforceability of [LLC] agreements."); *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 290–92 (Del. 1999).

31.    Judicial dissolution of entities created under, and granted substantial contractual freedom by, the laws of one state should be accomplished by a decree of a court of that state. *See Classic Coffee Concepts, Inc. v. Anderson*, 2006 NCBC LEXIS 24, at *45 (N.C. Super. Ct. Dec. 1, 2006) (finding that a North Carolina court lacked authority to judicially dissolve a Delaware corporation); *In re Carlisle Etcetera LLC*, 114 A.3d 592, 605–06 (Del. Ch. 2015) ("[W]hen a sovereign makes available an [LLC] with attributes that contracting parties cannot grant themselves by agreement, the [LLC] is not purely contractual.  Because the entity has taken advantage of benefits that the sovereign has provided, the sovereign retains an interest in that [LLC].  That interest in turn calls for preserving the ability of the sovereign's courts to oversee and, if necessary, dissolve the [LLC].").

32.    Here, Plaintiff seeks judicial dissolution of Joan, a Delaware LLC.  Only the Delaware Court of Chancery may enter a decree dissolving Joan, and therefore Plaintiff's judicial dissolution claim must be dismissed for lack of subject matter jurisdiction.

C.    Breach of Fiduciary Duty Claim

33.    Plaintiff's breach of fiduciary duty claim is that

> [t]he majority owners have breached their fiduciary duties in numerous respects, to be supplemented when plaintiff may view the Joan books and records.  Plaintiff believes that there has been corporate waste, self-dealing and a lack of adherence to corporate formalities.  Specifically to date plaintiff pleads that Elkin McCallum and Donna McCallum have breached their fiduciary duties by concealing the company's books and records and refusing to have a member's meeting.

(Compl. ¶¶ 33–34.)

1. Standing

34. Because Plaintiff purports to bring both a direct claim and a derivative claim for breach of fiduciary duty, the Court must first determine whether Plaintiff has standing to assert a direct claim for such alleged breach. North Carolina courts look to the laws of the state in which the LLC is organized to determine whether a claim is derivative or direct. *Scott v. Lackey*, 2012 NCBC LEXIS 60, at \*14 (N.C. Super. Ct. Dec. 3, 2012) ("Because BHCM is a limited liability company formed in Delaware, the Court looks to Delaware law to determine Plaintiff's standing to bring his direct claims.").

35. Under Delaware law, to determine whether a claim is direct or derivative, a court must look to the nature of the wrong and to whom the relief will go. *Tooley v. Donaldson, Lufkin, & Jenrette, Inc.*, 845 A.2d 1031, 1039 (Del. 2004). A member's claimed direct injury must be independent of any alleged injury to the LLC. *Id.* A member must demonstrate that the duty breached was owed to the member and that the member can prevail without showing an injury to the LLC. *Id.*; *Kuroda v. SPJS Holdings, L.L.C.*, 971 A.2d 872, 887 (Del. Ch. 2009) ("Delaware law is clear that direct claims are available only where the member has suffered damage that is independent of any damage suffered by the limited liability company.").

36. Here, Plaintiff's breach of fiduciary duty claim is based on Elkin failing to hold a members meeting and refusing to allow Plaintiff to inspect Joan's books and records. The nature of the wrong alleged is that Plaintiff was not permitted to inspect the books and records and Plaintiff has been unable to get company information

because Elkin has failed to have a members meeting, and any relief would go to Plaintiff. Therefore, Plaintiff has standing to assert a direct claim for breach of fiduciary duty. *Sanders v. Ohmite Holding, LLC*, 17 A.3d 1186, 1188 (Del. Ch. 2011) (deciding a member's direct claim to inspect company books and records); *RED Capital Inv. L.P. v. RED Parent LLC*, 2016 Del. Ch. LEXIS 25, at *10–11 (Del. Ch. Feb. 11, 2016) (same); *Somerville S Trust v. USV Partners, LLC*, 2002 Del. Ch. LEXIS 103, at *1 (Del. Ch. Aug. 2, 2002) (same).

### 2. Governing Law

37. The Court must next determine which state's law governs Plaintiff's breach of fiduciary duty claim. In their briefs, the parties argued the breach of fiduciary duty claim as if North Carolina law applies; however, the parties did not provide a basis as to why North Carolina law governs the claim, and the Court does not find the issue to be so straightforward.

38. Under North Carolina conflict of law principles, matters affecting the substantial rights of the parties are determined by *lex loci*, the law of the situs of the claim, and remedial or procedural rights are determined by *lex fori*, the law of the forum. *E.g.*, *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722–23 (2010). For tort claims, the state where the injury occurred is considered the situs of the claim. *Id.* The place of the injury is the state where the injury or harm was sustained or suffered—the state where the last event necessary to make the actor liable or the last event required to constitute the tort takes place, and the substantive law of that state applies. *Id.* at 695, 698 S.E.2d at 724.

39.     Here, the Operating Agreement does not expand, limit, or alter traditional fiduciary duties.  Plaintiff's breach of fiduciary duty claim is thus properly classified as a tort claim, rather than a contract claim.  *Nelson v. Alliance Hospitality Mgmt.*, 2013 NCBC LEXIS 39, at *25 (N.C. Super. Ct. Aug. 20, 2013).  As a result, the choice-of-law provision in the Operating Agreement does not apply, and the law of the situs of the claim controls.  *See, e.g.*, *Associated Packaging, Inc. v. Jackson Paper Mfg. Co.*, 2012 NCBC LEXIS 13, at *9–10 (N.C. Super. Ct. Mar. 1, 2012) ("While the LLC Agreement's choice of law provision would control enforcement of the LLC Agreement itself, the provision does not control the [tort] claims in this case." (citation omitted)).

40.     Plaintiff's breach of fiduciary duty claim is based on Elkin failing to hold a members meeting and refusing to allow Plaintiff to inspect Joan's books and records.  It is unclear from the Complaint where Elkin's relevant acts took place.  On the one hand, Plaintiff is a North Carolina resident; the last scheduled members meeting was to take place in North Carolina; Joan has an office in North Carolina; Elkin has a residence in North Carolina; and Plaintiff, through counsel, made a final demand that the information requested be provided to Plaintiff (in North Carolina) by the close of business on February 17, 2016, or otherwise Plaintiff would bring an action to receive the information.  Plaintiff did not receive the information and brought this action as a result on February 18, 2016.  On the other hand, Elkin is a Massachusetts resident; Joan is a Delaware LLC with its principal place of business in Massachusetts; and the first scheduled members meeting was to take place in

Massachusetts. Further, it is unclear where Joan maintains its books and records and where inspection of such records would occur.

41. However, the Court concludes that it need not determine the situs of the claim because, applying the law of either jurisdiction, Plaintiff's claim for breach of fiduciary duty must be dismissed.

i. Application of Massachusetts Law

42. Under Massachusetts law, the law of the state of organization governs the liability of an LLC's members and managers. Mass. Gen. Laws ch. 156C, § 47 (2015). Here, because Joan is organized in Delaware, Massachusetts law requires that Delaware law govern Plaintiff's breach of fiduciary duty claim.

43. In order to establish a claim for breach of fiduciary duty under Delaware law, a plaintiff must show that: (1) a fiduciary duty exists; and (2) the fiduciary breached that duty. *Estate of Eller v. Bartron*, 31 A.3d 895, 897 (Del. 2011).

44. Unless otherwise provided in an LLC agreement, the managers and controlling members of an LLC owe traditional fiduciary duties of care and loyalty to the LLC members. *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 660−61 (Del. Ch. 2012); *CMS Inv. Holdings, LLC v. Castle*, C.A. No. 9568-VCP, 2015 Del. Ch. LEXIS 169, at *65 (Del. Ch. June 23, 2015); *Kelly v. Blum*, 2010 Del. Ch. LEXIS 31, at *3 (Del. Ch. Feb. 24, 2010). A manager of an LLC qualifies as a fiduciary to the LLC and its members because a manager has more than an arms-length, contractual relationship with the LLC members and is vested with discretionary power to manage the LLC's business. *CMS Inv. Holdings, LLC*, 2015 Del. Ch. LEXIS 169, at *65−66.

45. Here, although Elkin is not named in the Operating Agreement as the manager, Elkin is Joan's President and CEO. Therefore, at the motion to dismiss stage, Plaintiff has alleged sufficient facts from which it may be found that Elkin has more than an arms-length, contractual relationship with Joan's members and thus owes fiduciary duties to Plaintiff. *See id.* at *67–68 (finding that, at the motion to dismiss stage, allegations that a member was responsible for running certain operations of the LLC were sufficient allegations from which a fiduciary relationship may be found).

46. Plaintiff states that Elkin breached his fiduciary duties in two respects: (1) by failing to hold a members meeting; and (2) by refusing to allow Plaintiff to inspect Joan's books and records. Plaintiff further alleges that her allegations will be supplemented after inspection of the books and records.

47. "The fiduciary duty of care requires that [managers] . . . use that amount of care which ordinarily careful and prudent men would use in similar circumstances . . . ." *In re Walt Disney Co.*, 907 A.2d 693, 749 (Del. Ch. 2005). The fiduciary duty of loyalty requires that a manager act in the best interest of the company, and that a manager put the interests of the company and its interest owners before his own. *Id.* at 751. Here, Elkin's failure to hold a members meeting implicates the duty of care, rather than the duty of loyalty. *See id.* (noting that the duty of loyalty is implicated when a fiduciary stands on both sides of a transaction or receives a personal benefit).

48. The standard for evaluating a breach of the duty of care is gross negligence. *McPadden v. Sidhu*, 964 A.2d 1262, 1274 (Del. Ch. 2008); *In re Walt Disney Co.*, 907 A.2d at 749; *Prospect St. Energy, LLC v. Bhargava*, 2016 Del. Super. LEXIS 57, at *21–22 (Del. Super. Ct. Jan. 27, 2016) (applying the gross negligence standard in the LLC context and finding a claim for gross negligence is the same as a claim for breach of fiduciary duty). Gross negligence is reckless indifference to the interest owners or actions that are without the bounds of reason. *McPadden*, 964 A.2d at 1274; *In re Walt Disney Co.*, 907 A.2d at 750; *Prospect St. Energy, LLC*, 2016 Del. Super. LEXIS 57, at *21–22.

49. Here, Plaintiff requested a members meeting in order to obtain information. (Compl. ¶ 17.) Plaintiff made her first request for a meeting on January 4, 2016. (Compl. Ex. 2.) In response to that request, Elkin scheduled a meeting for February 1, 2016. Thereafter, Elkin cancelled that meeting and rescheduled it for February 11, 2016. For health reasons, Elkin cancelled the February 11 meeting. As a result, Plaintiff made her second request on February 11, 2016 for a meeting to be held by February 17, 2016. (Compl. Ex. 6.) This action was brought on February 18, 2016.

50. Neither the Operating Agreement nor the Delaware Act requires members meetings. *See* Del. Code Ann. tit. 6, § 18-302(c) (stating that members may take action without a meeting unless otherwise provided in an LLC agreement). Assuming *arguendo* that Delaware law recognizes that failing to hold a members meeting may constitute a breach of fiduciary duty under some circumstances, the Court concludes that, under the facts alleged here, failing to hold a members meeting within one and

one-half months of Plaintiff's request to have a meeting—especially when neither the Operating Agreement nor the Delaware Act requires such a meeting—is insufficient to satisfy the requirement of pleading gross negligence.

51.     Moreover, the Court notes that the Complaint states that Plaintiff sought a members meeting to obtain more information, and that Defendants breached their fiduciary duties in numerous ways and the allegations will be supplemented after Plaintiff inspects the books and records.  The breach of fiduciary duty claim based on the failure to hold a members meeting is heavily dependent on the Inspection Claim. However, as discussed previously, the Delaware Court of Chancery has exclusive jurisdiction over the determination as to whether Plaintiff is entitled to the information sought.

52.     As to the breach of fiduciary duty claim based on Elkin refusing to allow Plaintiff to inspect the books and records, because the Delaware Court of Chancery has exclusive jurisdiction over Plaintiff's Inspection Claim and the determination of whether Plaintiff is entitled to the information sought, this Court has no authority to determine the propriety of Elkin's refusal to permit Plaintiff to inspect the books and records.  Therefore, this Court has no authority to find that such refusal was a breach of Elkin's fiduciary duties to Plaintiff.  In asking this Court to find Elkin breached his fiduciary duties to Plaintiff by failing to allow Plaintiff to inspect Joan's books and records, Plaintiff is, in essence, asking this Court to determine whether Plaintiff is entitled to the information requested, which this Court does not have the authority to do.

53. Therefore, because failing to have a members meeting under these circumstances does not amount to gross negligence, and because the Delaware Court of Chancery has exclusive jurisdiction over the Inspection Claim and whether Plaintiff is entitled to the information requested, Plaintiff's breach of fiduciary duty claim based on Elkin failing to hold a members meeting and refusing Plaintiff's inspection request must be dismissed.

ii.  Application of North Carolina Law

54. In order to establish a claim for breach of fiduciary duty under North Carolina law, a plaintiff must show that: (1) the defendant owed the plaintiff a fiduciary duty; (2) the defendant breached his fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to the plaintiff. *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 68, 628 S.E.2d 15, 20 (2006).

55. Under the North Carolina Act, a manager of an LLC must discharge his duties in good faith, with the care of an ordinary prudent person, and in the best interests of the LLC. N.C. Gen. Stat. § 57D-3-21(b). The manager owes these fiduciary duties to the LLC, not to individual members. *Id.*; *see also Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 474, 675 S.E.2d 133, 137 (2009). Therefore, Elkin, as the manager of Joan, does not owe fiduciary duties to Plaintiff, a member of Joan.

56. Under the North Carolina Act, members of an LLC are like shareholders in a corporation in that members do not owe fiduciary duties to each other or the LLC, except a controlling member owes fiduciary duties to minority members. *Kaplan*, 196 N.C. App. at 473, 675 S.E.2d at 137. A 50% owner is not a majority interest owner,

and thus a 50% owner does not owe fiduciary duties to the other interest owners. *Id.* (holding that a member who owned a 41.5% interest, and who was the largest percentage interest owner, was a minority member who did not owe fiduciary duties to the other members); *BOGNC, LLC v. Cornelius NC Self-Storage, LLC*, 2013 NCBC 26, at *44 (N.C. Super. Ct. May 1, 2013) (concluding that a 50% owner is not a majority interest owner and therefore does not owe fiduciary duties to the other members). Here, Elkin owns 50% of the membership interest in Joan. Elkin is therefore not a controlling member and does not owe fiduciary duties to Plaintiff.

57. Plaintiff contends that Elkin operates as a 75% interest owner because, in addition to his 50% ownership interest, he controls Donna's 25% ownership interest. While North Carolina courts have recognized that individual minority shareholders of a closely-held corporation who act in concert and collectively own the majority interest in the corporation may owe fiduciary duties as the controlling shareholders, North Carolina courts have not recognized that possibility in the context of an LLC. *See Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 407, 537 S.E.2d 248, 260 (2000); *Raymond James Capital Partners, L.P. v. Hayes*, 789 S.E.2d 695, 701 (N.C. Ct. App. 2016) ("[A]n exception to [the general] rule is that a controlling shareholder owes a fiduciary duty to minority shareholders. To that end, our courts have extended special protections to minority shareholders in *closely held corporations*." (emphasis added) (internal quotations omitted) (citation omitted) (citing *Norman*, 140 N.C. App. at 407, 537 S.E.2d at 260)); *Fiske v. Kieffer*, 2016 NCBC LEXIS 22, at *10 (N.C. Super. Ct. Mar. 9, 2016) (stating that the holding in

*Norman* has not been extended to minority interest owners in an LLC); *Wortman v. Hutaff*, 2013 NCBC LEXIS 47, at \*22 (N.C. Super. Ct. Oct. 29, 2013) (finding that two members who each owned a 33.33% interest were minority interest owners and they "did not owe Plaintiffs fiduciary duties simply because together they owned a majority interest in [the LLC] and could out-vote Plaintiffs"); *Blythe v. Bell*, 2013 NCBC LEXIS 17, at \*14 (N.C. Super. Ct. Apr. 8, 2013) (stating that the *Norman* rule should not apply in the LLC context).

58.    The Court concludes that, applying North Carolina law, Plaintiff has failed to adequately allege that Elkin owed fiduciary duties to Plaintiff, and therefore the breach of fiduciary duty claim must be dismissed.

D.    Derivative Claims

59.    In addition to the direct action, Plaintiff asserts the Claims derivatively on behalf of Joan.  North Carolina courts look to the law of the state in which an LLC is organized to determine the procedural prerequisites to bringing a derivative claim. *Scott v. Lackey*, 2012 NCBC LEXIS 60, at \*14–15 (N.C. Super. Ct. Dec. 3, 2012). Furthermore, the North Carolina Act specifically provides that the law of the state in which a foreign LLC is organized governs derivative proceedings, except for matters regarding a stay of the proceedings, discontinuance or settlement, and payment of expenses.  N.C. Gen. Stat. § 57D-8-06.  Thus, Delaware law governs whether Plaintiff may bring a derivative action on behalf of Joan.

60.    Under Delaware law, a member of an LLC may bring a derivative action "if managers or members with authority to do so have refused to bring the action or if

an effort to cause those managers or members to bring the action is not likely to succeed." Del. Code Ann. tit. 6, § 18-1001. "[T]he complaint shall set forth with particularity the effort, if any, of the plaintiff to secure initiation of the action by a manager or member or the reasons for not making the effort." *Id.* § 18-1003. "[T]he pleading burden imposed on the sponsor of derivative claims is more onerous [than the pleading burden to survive a motion to dismiss for failure to state a claim]; it requires pleading 'with particularity' to survive; one cannot rest after serving mere notice of the claim asserted." *Spellman v. Katz*, C.A. No. 1838-VCN, 2009 Del. Ch. LEXIS 18, at *17–18 (Del. Ch. Feb. 6, 2009). A court will not "guess those facts that might support a derivative claim." *Id.* at *22. The complainant must set forth supporting factual allegations, and "[a] complaint devoid of factual specificity will fail to provide the necessary basis for excusing demand." *Id.* at *22–23.

61. Here, Plaintiff states in her Complaint that "[t]his Complaint including the exhibits thereto sets forth the efforts to obtain a members meeting, access to the corporate books and records, and an understanding of the health and competency of Elkin . . . , as set forth in Del. [Code Ann. tit. 6,] § 18-1003." (Compl. ¶ 39.) Although the Complaint sets forth Plaintiff's efforts to have a members meeting and inspect Joan's books and records, the Complaint does not set forth any efforts to cause the members to bring this action. The efforts contemplated by section 18-1003 are those efforts to cause the members to bring the lawsuit based on the failure to have a members meeting and concealment of books and records—not Plaintiff's efforts to have a members meeting and to gain access to books and records. Thus, Plaintiff has

not made a demand on Joan's members to bring this action pursuant to section 18-1001, and Plaintiff was required to set forth with particularity the reasons why demand would have been futile. *See Spellman*, 2009 Del. Ch. LEXIS 18, at *18.

62.     In this regard, Plaintiff has only alleged that

> [t]his action is proper at this time because Elkin McCallum and Joan have not provided corporate records to a minority owner, have admitted that Joan is in financial distress, have admitted that Elkin McCallum has some health issues, and have not had a members meeting. *It is not likely that further efforts to secure these action* [sic] *would be successful*, per Del. [Code Ann. tit. 6,] § 18-1001.

(Compl. ¶ 40 (emphasis added).)  The applicable standard is whether an effort to cause Joan's members to bring this lawsuit based on the failure to have a members meeting and concealment of books and records would have been futile—not whether further efforts by Plaintiff to have a members meeting and to gain access to books and records would have been futile.  There are no specific facts that provide the necessary basis for excusing demand. *See Spellman*, 2009 Del. Ch. LEXIS 18, at *20–22 ("One does not satisfy Delaware's demand futility standards with the oft-employed phrase that one cannot be expected to sue himself.  To the contrary, [the complainant] must show a substantial likelihood of [the other member's] personal liability before demand will be excused [for] lack of impartiality. . . . It is a rare case in which a director or member's actions are sufficiently egregious that a substantial likelihood of personal liability exists." (internal quotations omitted)).

63.     Plaintiff has not pled with particularity her reasons for not making a demand, and therefore Plaintiff has failed to comply with the procedural

prerequisites for bringing a derivative action.  Therefore, Plaintiff's derivative claims must be dismissed.

## V.    MOTION FOR A RECEIVER

64.    Plaintiff's Motion for a Receiver is made pursuant to N.C. Gen. Stat. § 57D-6-04 and Del. Code Ann. tit. 6, § 18-805.  The Motion for a Receiver requests that a receiver be appointed "to marshal Joan's assets, protect them, provide an accounting, prevent waste, and manage Joan" because Joan is in imminent danger of insolvency and irreparable harm will result to Plaintiff's profits and rents if a receiver is not appointed.  (Compl. ¶¶ 27–29.)

65.    Section 57D-6-04 of the North Carolina Act provides North Carolina courts with authority to appoint a receiver of a North Carolina LLC; it does not provide North Carolina courts with authority to appoint a receiver of an LLC organized in another state.  N.C. Gen. Stat. §§ 57D-1-03(13), (19), 57D-6-04.  Thus, this Court does not have authority to appoint a receiver of Joan pursuant to section 57D-6-04.

66.    Section 18-805 of the Delaware Act provides that the Delaware Court of Chancery may appoint a receiver of an LLC when the certificate of formation of an LLC formed under the Delaware Act is cancelled by the filing of a certificate of cancellation.  Del. Code Ann. tit. 6, §§ 18-101(6), 18-805.  No certificate of cancellation has been filed, and, in any event, that statute provides the Court of Chancery with authority to appoint a receiver of Joan; it does not provide this Court with such authority.  Thus, section 18-805 does not provide a basis for appointing a receiver of Joan.

67.     Pursuant to N.C. Gen. Stat. §§ 1-502(4) and 1-507.1, a North Carolina court may appoint a receiver over a foreign LLC's property within North Carolina when the LLC is in imminent danger of insolvency. N.C. Gen. Stat. §§ 1-502(4), 1-507.1. Appointment of a receiver is within the discretion of the trial court. *Barnes v. Kochhar*, 178 N.C. App. 489, 500, 633 S.E.2d 474, 481 (2006). Appointment of a receiver is a rare and drastic remedy, especially for solvent companies, and should be used cautiously. *Lowder v. All Star Mills, Inc.*, 301 N.C. 561, 577, 273 S.E.2d 247, 256 (1981). Appointment of a receiver has been found to be a proper remedy in cases where there is fraud or gross misconduct in company management, incapacity or neglect of those operating the company, evidence of diversion of company funds, and refusal to permit inspection of corporate books combined with other grounds justifying the appointment of a receiver. *Id.*

68.     Assuming that Joan has property within North Carolina over which this Court could appoint a receiver, the Court does not find that the allegations and proof before the Court at this time warrant such a drastic remedy. Plaintiff states that Joan is in imminent danger of insolvency and that Plaintiff has a right to profits and rents that are in imminent danger of being secreted; however, there is no evidence of fraud, gross misconduct, or incapacity of Joan's management. Plaintiff states that her allegations in support of appointing a receiver will be supplemented once Plaintiff inspects Joan's books and records, but the Court has concluded that the Delaware Court of Chancery has exclusive jurisdiction over the Inspection Claim. In light of the harshness of the remedy; the lack of evidence before the Court at this time

warranting such a harsh remedy; the Motion for a Receiver's dependency on the Inspection Claim; and the Delaware Court of Chancery's exclusive jurisdiction over such claim, the Court declines to exercise its discretion to appoint a receiver of Joan. Therefore, the Motion for a Receiver is denied.

## VI.   CONCLUSION

69.     For the foregoing reasons, the Court, in the exercise of its discretion, hereby **GRANTS** Defendants' Motion to Dismiss and **DISMISSES without prejudice** Plaintiff's claims, and **DENIES** Plaintiff's Motion for a Receiver.

**SO ORDERED**, this the 25th day of October, 2016.

/s/ Michael L. Robinson
_____
Michael L. Robinson
Special Superior Court Judge
  for Complex Business Cases