**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

────────────

**No. 08-1152**

────────────

MARK BAKER,

                Plaintiff - Appellant,

     v.

BOOZ ALLEN HAMILTON, INC.,

                Defendant - Appellee.

────────────

**No. 08-2321**

────────────

MARK BAKER,

                Plaintiff - Appellee,

     v.

BOOZ ALLEN HAMILTON, INC.,

                Defendant - Appellant.

────────────

Appeals from the United States District Court for the District
of Maryland, at Greenbelt.   Roger W. Titus, District Judge.
(8:06-cv-00889-RWT)

────────────

Argued:  October 28, 2009     Decided:  December 28, 2009

────────────

Before MICHAEL, Circuit Judge, HAMILTON, Senior Circuit Judge,
and Jane R. ROTH, Senior Circuit Judge of the United States
Court of Appeals for the Third Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Kathleen Joanna Woody, Silver Spring, Maryland, for Appellant/Cross-Appellee. Stephen William Robinson, MCGUIREWOODS, LLP, McLean, Virginia, for Appellee/Cross-Appellant. **ON BRIEF:** David L. Greenspan, MCGUIREWOODS, LLP, McLean, Virginia, for Appellee/Cross-Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Mark Baker (Baker) brought this diversity action against Booz Allen Hamilton, Inc. (BAH), alleging several negligence claims arising from the alleged sexual assault of Baker by a BAH employee. The district court granted summary judgment in favor of BAH. Following this ruling, BAH moved for sanctions, which the district court denied. Baker appeals the district court's summary judgment ruling, and BAH cross-appeals the district court's sanctions ruling. We affirm.

I

BAH is a management consulting firm with over 19,000 employees on six continents. In 1995, BAH commenced work for the United States Agency for International Development as a contractor on its project for the development and implementation of an effective bankruptcy system in Kazakhstan and Kyrgyzstan (the Bankruptcy Project).

On or about October 1, 1995, BAH entered into a one-year contract with Baker's mother, Kathleen Woody (Woody), in which Woody agreed to provide consulting services as an independent contractor, serving as "Chief of Party" to the Bankruptcy

Project. (J.A. 70).[1] As Chief of Party, Woody was responsible for supporting the development of legislation to allow bankruptcy laws to function in Kazakhstan and Kyrgyzstan. She was also responsible for supervising expatriate staff and reporting to her supervisors, who were located at BAH's offices in McLean, Virginia.

In October 1995, Woody traveled with her then-ten-year-old son to Almaty, Kazakhstan to begin working on the Bankruptcy Project. Woody's primary work station was in Almaty, where she resided with her son in an apartment, but she also made frequent trips to the Bankruptcy Project's Bishkek, Kyrgyzstan office. During these trips to Bishkek, Woody would bring her son, and the two would reside at the apartment of Vera Haugh, who worked for the Bankruptcy Project in Bishkek. On occasion, Woody's responsibilities took her away from both Kazakhstan and Kyrgyzstan, and on these occasions, Baker would stay with Haugh.

In Bishkek, Woody also had contact with another Bishkek-based BAH employee working on the Bankruptcy Project, Brian Davenport (Davenport). Davenport's primary job duties were to "deal with the non-legal, non-lawyer required aspects of performance and scope work under the [Bankruptcy Project's] task

_____

[1] Woody's compensation package covered certain expenses for her son during his year-long stay in Kazakhstan, including his airfare to and from Kazakhstan and his school tuition.

- 4 -

order." (J.A. 81). Davenport reported to Woody for "scope of work issues related to the task order itself," but generally reported to a Virginia-based BAH employee. Id.

Baker produced evidence that portrays Davenport as an angry, disgruntled, and sometimes explosive employee. For example, Dr. Igor Klyuchnikov, Deputy Chief of Party on the Bankruptcy Project, described Davenport as an "angry and sometimes physically and emotionally abusive person." (J.A. 474). He personally observed Davenport "yelling at and threatening staff, kicking furniture and throwing objects." Id. Some of the Kyrgyz nationals complained to Dr. Klyuchnikov, and he received one complaint that Davenport slapped an employee.[2]

Woody testified that, between the months of January and March 1996, she had repeated discussions with her BAH supervisors concerning Davenport's "explosive" behavior, complaining in general about Davenport's "[s]lapping, throwing, shouting, screaming, [and] yelling." (J.A. 257, 268).[3] She indicated the major catalysts for Davenport's behavior were his

---

[2] Baker also personally observed Davenport slap an employee across the face.

[3] Haugh testified that Davenport had a "bad temper," but was not the type of person who would assault someone. (J.A. 383). Rather, "he's the type that would throw things off his desk, yell and scream, maybe stamp his feet . . . and slam doors." Id.

wife's desire to divorce him and his desire to return to work in the United States.

Davenport also on occasion got angry with Baker. For example, on a three-hour car ride from Almaty to Bishkek in December 1995, Baker was playing a game with the hired driver and perhaps acting a little rambunctiously. At one point, Davenport (who was sitting in the front seat with the driver) turned to Baker (who was sitting next to Woody in the backseat), pointed his finger at him, and said, raising his voice, "if I don't get my REM [(Rapid Eye Movement)] sleep I'm going to explode." (J.A. 323). Moreover, at a New Year's Eve party, about three months before the alleged sexual assault, in a threatening tone, Davenport told Baker he was going to "get" him. (J.A. 287).

On April 6, 2006, Baker brought this negligence action against BAH in the Circuit Court for Montgomery County, Maryland.[4] BAH removed the case to the United States District Court for the District of Maryland. On March 9, 2007, Baker filed an amended complaint. The amended complaint alleges that

> [i]n or about March of 1996, while performing her duties as hereinabove described in the country of Kyrgyzstan, the Plaintiff, then a minor, who was residing with his mother overseas, was raped and

---

[4] Because of Baker's age, the statute of limitations was tolled under Maryland law.

> sodomized and threatened not to tell his mother by an employee of BOOZ ALLEN who was known or in the exercise of reasonable care should have been known to BOOZ ALLEN as a person with serious emotional disorders who had previously requested of BOOZ ALLEN that he be returned to the United States as a result of said emotional disorders.

(J.A. 32-33). Although not named in the amended complaint, Davenport is the BAH employee who allegedly sexually assaulted Baker. Davenport vehemently denies the allegations, but BAH concedes for purposes of summary judgment we must assume that Davenport engaged in such conduct. According to Baker, the alleged sexual assault occurred while he was staying with Haugh at a time when Woody was away on business in Moscow. During this time, Davenport lured Baker to his own apartment in Bishkek and sexually assaulted him.[5]

Based on the allegations in the amended complaint, Baker claimed that BAH was negligent because it: (1) "[f]ailed to adequately consider the reports" that Davenport was suffering from emotional disorders which were likely to result in a sexual assault; (2) "[f]ailed to foresee" that Davenport's actions against Baker would be carried out; (3) "[f]ailed to warn" or provide notice to Woody of Davenport's emotional disorders; and

---

[5] Baker did not report the sexual assault to his mother. Rather, he disclosed the sexual assault to his therapist some time in early 1997. According to Baker, he did not disclose the sexual assault to Woody because, at the time, he "didn't trust anybody." (J.A. 207).

(4) "[f]ailed to provide" Baker with adequate security. (J.A. 33).

On July 30, 2007, BAH filed a motion for summary judgment. On December 19, 2007, the district court held a hearing on the motion. At the conclusion of the hearing, the district court granted the motion. On January 16, 2008, BAH filed a motion for sanctions, which the district court denied on October 31, 2008. Baker filed a timely notice of appeal, and BAH filed a timely notice of cross-appeal.

II

Baker claims that the district court erred when it granted summary judgment in favor of BAH on his negligence claims. More specifically, he claims there are issues of fact regarding BAH's liability for the negligent hiring, retention, and supervision of Davenport.

In a diversity action, the law of the forum court governs the substantive issues and federal law governs the procedural issues. Dixon v. Edwards, 290 F.3d 699, 710 (4th Cir. 2002). Thus, Maryland's choice of law rules govern. Id.; Wells v. Liddy, 186 F.3d 505, 521 (4th Cir. 1999). Maryland applies the lex loci delicti rule in tort cases. Philip Morris, Inc. v. Angeletti, 752 A.2d 200, 230 (Md. 2000). Under that rule, when a tort occurs in another state, the substantive rights of the

parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place. Id. A tort occurs "where the injury was suffered, not where the wrongful act took place." Johnson v. Oroweat Foods Co., 785 F.2d 503, 511 (4th Cir. 1986) (applying Maryland law).

Baker's alleged injuries were suffered in Kyrgyzstan, the site of the sexual assault. Thus, Kyrgyz law applies, provided the requirements of Rule 44.1 of the Federal Rules of Civil Procedure are met. See Ferrostaal, Inc. v. M/V Sea Phoenix, 447 F.3d 212, 216 (3d Cir. 2006) (noting that where a party fails to carry its burden of proving foreign law under Rule 44.1, the forum law should apply); cf. The Hoxie, 297 F. 189, 190 (4th Cir. 1924) (noting, in pre-Rule 44.1 case, that forum law applies unless the party seeking to use foreign law establishes that foreign law differs from forum law).

Federal Rule of Civil Procedure 44.1 controls determinations of foreign law in federal court. It provides:

> A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing. In determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination must be treated as a ruling on a question of law.

Fed. R. Civ. P. 44.1. Rule 44.1 provides courts with broad authority to conduct their own independent research to determine foreign law but imposes no duty upon them to do so. See Carey v. Bahama Cruise Lines, 864 F.2d 201, 205 (1st Cir. 1988) ("[Rule] 44.1 empowers a federal court to determine foreign law on its own, but does not oblige it do so."). Thus, the party claiming foreign law applies carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the district court to apply it in a particular case. Cf. Whirlpool Fin. Corp. v. Sevaux, 96 F.3d 216, 221 (7th Cir. 1996) (holding that party waived conflicts of law issue because it failed to fulfill its obligation under Rule 44.1 "to provide the district court with 'reasonable notice' of his intention to raise an issue of foreign law"). Where a party fails to satisfy either burden, the district court should apply the forum state's law. Ferrostaal, 447 F.3d at 216.

In order to meet its burden of proving Kyrgyz law, BAH proffered the July 25, 2007 declaration of a Kyrgyz lawyer, Tatiana Ivaschenko. In her declaration, Ivaschenko stated that Baker's claims were without merit under Kyrgyz law, opining:

> [A] legal entity shall be responsible for its employee's actions or inactions, if that employee has caused harm to third parties in the course of the performance of his or her employment obligations. . . .

Even if an employee were to cause harm to a third party in the course of performance by that employee of his or her employment obligations, an employer shall not be liable for its employee's actions or inactions unless the predicate act[s], which must have resulted in criminal sanctions, [were] completed upon the employer's order and control. . . .

In the Kyrgyz Republic, the civil courts will not examine a claim for damages for buggery (defined as sodomy) unless the fact of buggery has been established in a criminal procedure . . . .

* * *

In sum, the legislation of the Kyrgyz Republic as of 1996 contains provisions, according to which, an employer is only liable for damages ca[u]sed by its employee to a third party only in the course of performance by such employee of his/her employment obligations or official duties. An employer cannot be held responsible for a criminal act (i.e., buggery) committed by the employee, unless the act is completed following the order of the employer and under the employer's control. Thus, Booz Allen Hamilton Inc. cannot be held liable for the facts alleged in the Amended Complaint.

(J.A. 409-10).

In its decision granting BAH's motion for summary judgment, the district court, out of an abundance of caution, held that Baker could not prevail under Kyrgyz (the locus of Baker's injuries), Maryland (the forum state), or Virginia law (where decisions concerning Davenport's employment were made). Baker claims that Maryland law should apply because BAH failed to meet its burden of proving Kyrgyz law and, therefore, Maryland law, as the forum state's law, applies. In particular, he claims that the statutes referenced in the Ivaschenko declaration are

- 11 -

not controlling and, in any event, do not fully explain the breadth of Kyrgyz law.

We need not decide whether the district court erred in examining Baker's claims under Kyrgyz law. This is so because, even accepting Baker's invitation to apply Maryland law, Baker's negligence claims fail.

The district court rejected Baker's negligence claims under Maryland law, principally concluding that Baker failed to establish that any negligent conduct by BAH proximately caused Baker's injuries. In so concluding, the district court observed:

> I've received no information in this record that would support a conclusion that Booz Allen was on notice that this employee had a proclivity or a high risk of committing sexual attacks of any nature, much less violent attacks. All I do have is some incidents of obnoxious behavior--two instances of slapping someone, and bitter complaints by the plaintiff's mother to her employer that this man should be sent home.

(J.A. 543).

Under Maryland law, a plaintiff alleging a negligence claim must demonstrate "(1) that the defendant had a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the defendant's breach of duty proximately caused the loss or injury." Pendleton v. State, 921 A.2d 196, 204 (Md. 2007).

In the negligent hiring, retention, and supervision context, an employer has the duty to use reasonable care to select employees competent and fit for the work assigned to them and to refrain from retaining the services of an unfit employee. Henley v. Prince George's County, 503 A.2d 1333, 1341 (Md. 1986). The class of persons intended to be protected by the imposition of this duty necessarily includes those members of the public who would reasonably be expected to come in contact with the employee in his performance of his duties. Id.

Proximate cause "involves a conclusion that someone will be held legally responsible for the consequences of an act or omission." Peterson v. Underwood, 264 A.2d 851, 855 (Md. 1970). To be a proximate cause for an injury, "the negligence must be 1) a cause in fact, and 2) a legally cognizable cause." Hartford Ins. Co. v. Manor Inn of Bethesda, Inc., 642 A.2d 219, 230 (Md. 1994) (citation and internal quotation marks omitted).

Causation-in-fact concerns the threshold inquiry of "whether defendant's conduct actually produced an injury." Peterson, 264 A.2d at 855. When two or more independent acts bring about an injury, as alleged here by Baker, causation-in-fact may be found if it is more likely than not that the defendant's conduct was a substantial factor in producing the plaintiff's injuries. Pittway Corp. v. Collins, 973 A.2d 771, 787 (Md. 2009).

Once causation-in-fact is established, the proximate cause inquiry turns to whether the defendant's negligent actions constitute a legally cognizable cause of the plaintiff's injuries. Id. This part of the causation analysis requires us to consider whether the actual harm to the plaintiff falls within a general field of danger that the defendant should have anticipated or expected. Stone v. Chicago Title Ins. of Md., 624 A.2d 496, 500 (Md. 1993). Legal causation is a policy-oriented doctrine designed to be a method for limiting liability after cause-in-fact has been established. Pittway, 973 A.2d at 787. The question of legal causation most often involves a determination of whether the injuries were a foreseeable result of the defendant's negligent conduct. Id. at 788. Other public policy considerations that may play a role in determining legal causation include the remoteness of the plaintiff's injury from the defendant's negligence and the extent to which the injury is out of proportion to the defendant's culpability. Id. Simply put, the defendant is not liable if it appears highly extraordinary and unforeseeable that the plaintiff's injuries occurred as a result of the defendant's alleged tortious conduct. Id.

In our view, the injury in this case (sexual assault) simply was not a reasonably foreseeable injury arising from the alleged negligent hiring, retention, and/or supervision of

- 14 -

Davenport. The injury suffered by Baker was criminal sexual assault. Baker argues that this sexual assault was a foreseeable result of Davenport's "explosive" behavior in the workplace. We disagree. Without question, Davenport's demeanor at work was offensive. Slapping fellow employees is deplorable. However, BAH reasonably can assume that an employee who has slapped fellow employees on occasion will not sexually assault the child of an independent contractor of BAH. Therefore, BAH could not reasonably anticipate that Davenport's behavior was an inevitable prelude to sexual assault if his actions did not clearly and unmistakably threaten particular criminal activity that would have put a reasonable employer on notice of an imminent risk of harm to a victim. Slapping a fellow employee simply does not inexorably lead to criminal sexual assault.

It does not follow that every time an employee slaps another employee the employer has to fire the aggressor out of fear that the employee might rape another employee or person. But this is exactly what Baker is seeking this court to hold. Such a holding would undoubtedly tear the concept of proximate cause from its moorings. Accordingly, the district court did not err when it concluded that Baker's negligence claims failed under Maryland law.

BAH appeals the district court's denial of its motion for sanctions. BAH sought sanctions under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927. BAH claims that sanctions were appropriate because: (1) Baker did not conduct an adequate pre-filing investigation; and (2) Baker refused to abandon his negligence claims after it was clear he had no chance of success. We review the district court's grant or denial of a motion for sanctions for an abuse of discretion. Chaudhry v. Gallerizzo, 174 F.3d 394, 410 (4th Cir. 1999).

Under Rule 11, "a complaint containing allegations unsupported by any information obtained prior to filing, or allegations based on information which minimal factual inquiry would disprove, will subject the author to [Rule 11] sanctions." In re Kunstler, 914 F.2d 505, 516 (4th Cir. 1990). Moreover, Rule 11 empowers the district court to sanction a party or lawyer for insisting on a position after it is no longer tenable. Morris v. Wachovia Securities, Inc., 448 F.3d 268, 279 (4th Cir. 2006).

Section 1927 provides in relevant part:

> Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. The Supreme Court has recognized that § 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants." Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980). Moreover, "[t]he statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." Id. Instead, the statute is "concerned only with limiting the abuse of court processes." Id. For this reason, a court considering the propriety of a § 1927 award must focus "on the conduct of the litigation and not on its merits." DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999).

BAH claims that Baker falsely alleged in his complaint that: (1) Davenport had serious emotional disorders; (2) Davenport had previously requested that he be returned to the United States as a result of the disorders; (3) BAH failed to consider reports of Davenport's disorders; and (4) the sexual assault was caused by Davenport's disorders. BAH also claims that the frivolous nature of Baker's claims became all the more apparent following Baker's deposition. Finally, BAH takes issue with the manner in which Woody handled certain aspects of the case.

In this case, the district court did not abuse its discretion in denying BAH's motion for sanctions. Baker presented evidence that Davenport was far from a model employee, one capable of committing deplorable acts, including slapping

employees. Given his propensity for slapping employees and committing other unruly acts in the workplace, it was not objectively unreasonable for Baker to claim that Davenport suffered from emotional disorders and that said disorders proximately caused the sexual assault of Baker. Finally, we have reviewed Woody's conduct and conclude that the district court acted well within its discretion when it decided to decline to sanction her either under Rule 11 or § 1927.

IV

For the reasons stated herein, the judgment of the district court is affirmed.

<u>AFFIRMED</u>