Soma Tech., Inc. v. Dalamagas, 2017 NCBC 42.

STATE OF NORTH CAROLINA

MECKLENBURG COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 11100

SOMA TECHNOLOGY, INC.

                Plaintiff,

v.

PHOTIOS DALAMAGAS; DENOVA
MEDICAL, INC.; and HIREN
DESAI,

                Defendants.

**ORDER AND OPINION ON
DEFENDANT DESAI'S 12(B)(6)
MOTION, DEFENDANTS
DALAMAGAS AND DENOVA'S
12(B)(6) MOTION, AND PLAINTIFF
SOMA'S ALTERNATIVE MOTION TO
AMEND**

1.    **THIS MATTER** is before the Court upon (i) Defendant Hiren Desai's ("Desai") Motion to Dismiss under N.C. R. Civ. P. 12(b)(6) ("Desai's 12(b)(6) Motion"), (ii) Defendants Photios Dalamagas ("Dalamagas") and Denova Medical Inc.'s ("Denova") Motion to Dismiss under N.C. R. Civ. P. 12(b)(6) ("Dalamagas and Denova's 12(b)(6) Motion") or, in the alternative, to stay under N.C. Gen. Stat. § 1-75.12 ("Alternative Stay Motion") or to remove this case for improper venue under N.C. Gen. Stat. § 1-82 ("Alternative Venue Motion"); and (iii) Plaintiff Soma Technology, Inc.'s ("Soma" or "Plaintiff") alternative motion to amend ("Motion to Amend") (together the "Motions") in the above-captioned case.

2.    Having considered the Motions, the parties' briefs in support of and in opposition to the Motions, supplemental briefs, and the arguments of counsel at a hearing on the Motions on December 1, 2016, the Court **GRANTS** Desai's 12(b)(6) Motion; **GRANTS** Dalamagas and Denova's 12(b)(6) motion; **DENIES** as moot Dalamagas and Denova's Alternative Stay Motion; **DENIES** as moot Dalamagas

and Denova's Alternative Venue Motion; and **DENIES** Soma's Motion to Amend, each for the reasons set forth below.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Daniel F.E. Smith and Robert J. King III, and Shapiro Law Offices, LLC, by Jonathan M. Shapiro, for Plaintiff Soma Technology, Inc.*

> *Law Office of Faith Fox, PLLC, by Paul Stevens, for Defendants Photios Dalamagas and Denova Medical, Inc.*

> *Tin, Fulton, Walker & Owen, PLLC, by Sam McGee, for Defendant Hiren Desai.*

Bledsoe, Judge.

## I.

## PROCEDURAL BACKGROUND

3. Soma initiated this action on June 21, 2016 against Dalamagas and Denova and later filed an amended complaint on July 18, 2016 ("Amended Complaint") to include claims against Desai. Soma has asserted direct claims against Dalamagas and Desai for fraud and statutory and common law unfair competition and against all Defendants for tortious interference with contract and with "reasonable business expectations."[1] Soma also requests (i) the entry of a declaratory judgment, (ii) a permanent injunction, (iii) a constructive trust, (iv) punitive damages, and (v) an accounting of each Defendant's transactions with non-party Soma Tech Pvt. Ltd. ("Soma India").

---

[1] Soma has clearly stated that its claims in this action are asserted directly, not derivatively. *See* Pl.'s Suppl. Br. Choice of Law 6 ("Soma wishes to make clear to this Court that it does not seek to recover any damages nor does it seek relief against Defendants that are derivative in nature on behalf of Soma India. Instead, Soma seeks to recover the damages and redress the harm that it has *directly* suffered due to Defendants' conduct.").

4.     The case was designated a mandatory complex business case under N.C. Gen. Stat. § 7A-45.4(b) on June 22, 2016, and assigned to the undersigned on June 28, 2016.

5.     On August 29, 2016, Defendant Desai moved to dismiss Soma's Amended Complaint under N.C. R. Civ. P. 12(b)(2) for lack of personal jurisdiction ("Desai's 12(b)(2) Motion") and, in the alternative, moved to stay the case under N.C. Gen. Stat. § 1-75.12 ("Desai's Alternative Stay Motion").  At the same time, Desai filed his 12(b)(6) Motion, contending that the claims asserted against him should be dismissed for failure to state a claim under Rule 12(b)(6).

6.     On September 16, 2016, Defendants Denova and Dalamagas jointly filed their 12(b)(6) Motion, seeking to dismiss the Amended Complaint under Rule 12(b)(6), as well as their Alternative Stay Motion, seeking to stay this case under N.C. Gen. Stat. § 1-75.12, and their Alternative Venue Motion, seeking to "remove" the case to Connecticut state court based on improper venue under N.C. Gen. Stat. § 1-82.

7.     On September 21, 2016, Soma filed an "alternative motion" to take jurisdictional discovery and for leave to amend the Amended Complaint in the event the Court determined it could not resolve Desai's Rule 12(b)(2) motion on the pleadings or found any cause of action as pleaded in the Amended Complaint to suffer from a pleading deficiency.  Soma did not file proposed amendments to the Amended Complaint with its Motion to Amend.

8. On September 28, 2016, the Court granted Soma's motion to take jurisdictional discovery, and on October 7, 2016, deferred ruling on Soma's Motion to Amend until the Court considered Desai's 12(b)(6) Motion.

9. The Court held a hearing on the Motions on December 1, 2016, at which all parties were represented by counsel.

10. Thereafter, on December 2, 2016, the Court entered an Order addressing certain issues raised at the hearing and (1) ordered Defendants to file a stipulation of consent to jurisdiction in another jurisdiction by December 15, 2016 if Defendants sought a stay under N.C. Gen. Stat. § 1-75.12, and (2) invited the parties to file supplemental and responsive briefs addressing (i) the law applicable to Plaintiff's claims under controlling conflict of laws principles and (ii) the application of the laws of any applicable, non-North Carolina jurisdiction to the issues raised by the Motions.

11. None of the Defendants filed a consent to jurisdiction. Soma and Desai filed supplemental briefs on December 15, 2016 and responses on December 22, 2016, each relating to the issue of controlling law. Dalamagas and Denova declined to file supplemental briefs on the choice of law issue.

12. After concluding that the efficient administration of the case and the interests of justice would be advanced by a stay of discovery, the Court entered an Order dated December 6, 2016 staying all discovery pending the Court's resolution of the Motions.

13. On March 24, 2017, the Court denied Desai's 12(b)(2) Motion for lack of personal jurisdiction and Desai's Alternative Stay Motion. *See Soma Tech., Inc. v. Dalamagas*, 2017 NCBC LEXIS 26 (N.C. Super. Ct. Mar. 24, 2017). On April 19, 2017, Desai filed a Notice of Appeal of the Court's March 24, 2017 Order to the North Carolina Court of Appeals.[2]

14. The Motions are now ripe for resolution.

II.

FACTUAL BACKGROUND

15. The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6), but only recites those facts included in the Amended Complaint that are relevant to the Court's determination of the Motions.

16. Soma, a Connecticut corporation with its principal place of business in Connecticut, sells new and refurbished medical equipment and devices. (Am. Compl. ¶¶ 1, 8.)

17. Dalamagas, a citizen of North Carolina, is the current owner of and/or directs the affairs of Denova, a North Carolina corporation. (Am. Compl. ¶¶ 2–3.) Denova also sells new and refurbished medical equipment and devices. (Am.

---

[2] The Court concludes that a stay of the Court's consideration of the Motions pending resolution of the current appeal in the above-captioned case is not required under applicable law. *See* N.C. Gen. Stat. § 1-294; *see also Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 783 S.E.2d 264, 265–66, n.1 (N.C. Ct. App. Mar. 15, 2016) (dismissing appeal for lack of subject matter jurisdiction because, for cases designated after October 1, 2014, N.C. Gen. Stat. §7A-27 "clearly mandates appeals from final judgments rendered in the Business Court be brought in the North Carolina Supreme Court and not in [the Court of Appeals]" and noting "that certain interlocutory orders entered by the Business Court are likewise directly appealable to the Supreme Court" under N.C. Gen. Stat. § 7A-27(a)(3)).

Compl. ¶ 7.) Dalamagas co-founded Soma with Peter Leonidas ("Leonidas") in 1992. (Am. Compl. ¶ 9.)

18. In 2002, Soma hired Defendant Desai as an employee to manage Soma's sales in India. (Am. Compl. ¶ 10.) Soma ultimately terminated Desai in February 2015. (Am. Compl. ¶ 24.) Plaintiff alleges that Desai is currently a resident of Massachusetts and does business in North Carolina with Denova and Dalamagas. (Am. Compl. ¶ 5.)

19. In 2007, Leonidas and Dalamagas formed Soma India as a private limited company under the laws of India. (Am. Compl. ¶ 11.) Leonidas and Dalamagas established Soma India with Soma's financial support and intended for Soma India to focus Soma's sales efforts in India. (Am. Compl. ¶ 11.) Like Soma, Soma India is in the business of selling new and refurbished medical equipment and devices. (Am. Compl. ¶ 11.) Desai was entrusted to handle Soma India's business operations. (Am. Compl. ¶ 11.)

20. After the issuance of new shares in 2009, Soma India was held by Leonidas (29.41%), Dalamagas (29.41%), Soma (25%), Desai (15.89%), and Biharilal Parikh (.28%). (Am. Compl. ¶ 13.)

21. On November 16, 2012, Leonidas and Dalamagas executed an equity purchase agreement, by which Dalamagas sold to Leonidas all his shares and interests in Soma (4,250 shares representing 42.5%) and in Soma India (212,745 shares representing 29.41%) for $2,257,500 (the "EPA"). (Am. Compl. ¶¶ 14–15.) Dalamagas subsequently resigned from all the positions he held with Soma and

Soma India. (Am. Compl. ¶ 15.) By operation of the EPA, Soma India was held by Leonidas (58.82%), Soma (25%), Desai (15.89%), and Biharilal Parikh (.29%). (Am. Compl. ¶ 18.)

22. Consistent with their mutual agreement, Soma sold medical equipment and devices to Soma India through a transfer agent, Axia Surgical, LLC (the "Transfer Agent") until 2015. (Am. Compl. ¶ 17.) According to Soma, both Soma and Soma India expected their relationship to continue and grow to their mutual benefit. (Am. Compl. ¶ 18.) Over time, the Transfer Agent issued invoices on behalf of Soma totaling $550,040.05 for equipment Soma sold to Soma India (the "Equipment"). (Am. Compl. ¶¶ 19.) Soma contends that through Desai's and Dalamagas's improper interference and control, they caused Soma India to refuse to pay Soma for the Equipment. (Am. Compl. ¶¶ 20, 30–31.)

23. In addition, from 2008 through December 2015, Soma regularly transacted business in India through Soma India and expected to grow its business in India to the mutual benefit of both Soma and Soma India. (Am. Compl. ¶ 21.) According to Soma, however, in December 2014, Desai, while an employee of Soma, orchestrated a "lock out" of Soma's interest in Soma India and caused the business relationship to end. (Am. Compl. ¶ 22.) In particular, Soma alleges that Desai obtained and maintained control of Soma India by improperly appointing a friend and his friend's father as directors of Soma India, refusing to record the transfer of shares from Dalamagas to Leonidas under the EPA, controlling Soma India's finances, and dictating the actions of Soma India's accountant. (Am. Compl. ¶ 25.)

24. Although Soma terminated Desai's employment on or about February 26, 2015, Soma contends that Desai, in concert with Dalamagas, has continued to control Soma India, despite his lack of authority to act on behalf of Soma or Soma India. (Am. Compl. ¶ 24.) In particular, Soma alleges that Desai has improperly controlled Soma India by (i) continuing to direct the daily affairs of Soma India without authority to do so; (ii) instructing shareholders, directors, and agents of Soma India to cease communication with Soma or Leonidas; (iii) moving assets of Soma India out of Soma India's control; (iv) refusing to permit a proper corporate meeting of Soma India; and (v) permitting and directing improper voting regarding control of Soma India. (Am. Compl. ¶ 26.)

25. Soma further alleges that since 2015, Desai and Dalamagas have (i) prevented Soma and Leonidas from assuming control of Soma India, (ii) interfered with Soma's business in India, (iii) withheld payment owed to Soma for Equipment delivered to Soma India, and (iv) diverted business opportunities with Soma India away from Soma to Denova—a company Dalamagas controls. (Am. Compl. ¶¶ 28–30, 33.)

26. Soma further asserts that Denova has issued invoices to Soma India with huge mark-ups that require pre-payment "when these same terms [were] not offered to Soma," thereby harming both Soma India and Soma. (Am. Compl. ¶ 31.)

27. Finally, Soma contends that after an Indian court ordered Soma India to convene a shareholder meeting, which was duly held on March 29, 2016, Desai and Dalamagas unlawfully prevented Soma and Leonidas from presenting resolutions at

the meeting for the election of new directors, in particular, by permitting Dalamagas to vote as the owner of 212,746 shares of Soma India when Dalamagas and Desai knew that Dalamagas had sold these shares under the EPA three years before.  (Am. Compl. ¶¶ 35–39.)

28.   The Court takes judicial notice that there are currently pending several lawsuits in Connecticut and India between some subset of Dalamagas, Desai, Leonidas, Soma, and Soma India that concern the ownership and control of Soma and Soma India.  Each of these actions was filed prior to the initiation of this litigation.

## III.

## MOTIONS TO DISMISS UNDER RULE 12(B)(6)

29.   In ruling on a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory[.]"  *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987).  The Court construes the complaint liberally in favor of the non-movant.  *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009).

30.   Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports [the] claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim;  [or] (3) when some fact disclosed in the complaint necessarily defeats the . . . claim."

*Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985); *see also Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted).

31. The Court is not required "'to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005) (citations omitted). The Court can also ignore a plaintiff's legal conclusions. *McCrann v. Pinehurst, LLC*, 225 N.C. App. 368, 377, 737 S.E.2d 771, 777 (2013).

A. Declaratory Judgment under N.C. Gen. Stat. § 1-254

32. Soma seeks a declaratory judgment in this action concerning "whether Dalamagas has any—or has had any since the EPA—ownership interest in Soma India." (Am. Compl. ¶ 46.) Specifically, Soma seeks a declaration that "Dalamagas has had no interest in or right to act on behalf of [either Soma or Soma India] since [Dalamagas and Leonidas entered the EPA]." (Am. Compl. ¶ 48.) Soma also seeks a declaration that Dalamagas and Denova are liable for each other's misconduct. (Am. Compl. ¶ 48.)[3]

---

[3] Because Soma's requested declaration is an equitable remedy dependent upon a finding of liability on Soma's substantive claims for relief, the Court will address Soma's request in the equitable remedies section of this Order and Opinion at Section III.E *infra*.

33. Before determining the law applicable to Soma's claims, the Court first considers whether Soma has standing to seek a declaratory judgment construing the EPA under N.C. Gen. Stat. § 1-254. (Am. Compl. ¶ 48.) Our courts have long recognized that "[j]urisdiction in North Carolina depends on the existence of a justiciable case or controversy." *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 164, 552 S.E.2d 220, 225 (2001). To that end, "standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction," *Street v. Smart Corp.*, 157 N.C. App. 303, 305, 578 S.E.2d 695, 698 (2003) (citations and internal quotation marks omitted), and "a threshold issue that must be addressed, and found to exist, before the merits of [the] case are judicially resolved[,]" *In re T.B.*, 200 N.C. App. 739, 742, 685 S.E.2d 529, 531–32 (2009) (alteration in original) (citations and internal quotation marks omitted). *See generally Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 574 S.E.2d 48 (2002) (recognizing standing as "among the justiciability doctrines" and discussing elements).

34. "Standing refers to whether a party has a sufficient stake in an otherwise justiciable controversy such that he or she may properly seek adjudication of the matter." *Am. Woodland Indus., Inc. v. Tolson*, 155 N.C. App. 624, 626, 574 S.E.2d 55, 57 (2002). "If a party does not have standing to bring a claim, a court has no subject matter jurisdiction to hear the claim." *Estate of Apple v. Commercial Courier Express, Inc.*, 168 N.C. App. 175, 177, 607 S.E.2d 14, 16 (2005). "As the party invoking jurisdiction, [the] plaintiff has the burden of establishing standing."

*Raja v. Patel*, 2017 NCBC LEXIS 25, at \*11 (N.C. Super. Ct. Mar. 23, 2017) (citations and quotation marks omitted).

35. Section 1-254 sets forth the following criteria for determining who may seek declaratory relief in the courts of this State:

> Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a . . . contract or franchise, may have determined any question of construction or validity arising under the instrument, . . . contract, or franchise, and obtain a declaration of rights, status, or other legal relations thereunder.

*DeMent v. Nationwide Mut. Ins. Co.*, 142 N.C. App. 598, 601, 544 S.E.2d 797, 799 (2001) (quoting N.C. Gen. Stat. § 1-254).

36. "[S]tanding to seek a declaration . . . requires that the party seeking relief have an enforceable contractual right . . . ." *Id.* (holding that injured plaintiff lacked standing to seek declaration as to non-party tort-feasor's insurance coverage); *Coca-Cola Bottling Co. Consol. v. Durham Coca-Cola Bottling Co.*, 141 N.C. App. 569, 576, 541 S.E.2d 157, 162 (2000) (requiring party seeking declaration to have "some cognizable interest under the contract").

37. "Whether such a right exists depends on the intent of the contracting parties." *DeMent*, 142 N.C. App. at 601, 544 S.E.2d at 799 (citing *Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 329 N.C. 646, 651–54, 407 S.E.2d 178, 181–83 (1991)). When a benefit running to the plaintiff is merely incidental to the contract, a plaintiff "is without standing as a third party beneficiary to seek enforcement of the covenant or a declaratory judgment as to its terms." *Id.* at 605,

544 S.E.2d at 801; *see also Whittaker v. Furniture Factory Outlet Shops & Auto-Owners Ins. Co.*, 145 N.C. App. 169, 174–75, 550 S.E.2d 822, 825–26 (2001) (holding policy language established that plaintiff was an incidental beneficiary to insurance policy and thus lacked standing).

38.      Soma does not allege in the Amended Complaint that it is an interested person under the EPA between Dalamagas and Leonidas.[4] (*See* Am. Compl. ¶ 48(a), (b).)  Specifically, the Amended Complaint states that "Dalamagas entered into an Equity Purchase Agreement . . . pursuant to which he sold, and received compensation for, all of his shares and interests in Soma and Soma India (along with his interests in other entities) *to Leonidas* for a total purchase price of $2,257,500." (Am. Compl. ¶ 15 (emphasis added); *see also* Am. Compl. ¶ 41.)  The mere fact that Leonidas is a shareholder of Soma, however, is insufficient to confer on Soma a contractual right in the EPA; rather, at most, the EPA only incidentally benefits Soma.  (Am. Compl. ¶¶ 9, 41, 48.)  Therefore, as alleged, the Court concludes that Soma lacks standing to seek a declaratory judgment construing the EPA.  Thus, the Court concludes that Soma's declaratory judgment claim should be dismissed for lack of subject matter jurisdiction.

39.      In addition, while "standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issue he wants adjudicated," the "controversy requirement" is another aspect of justiciability that "focuses on the issue being adjudicated rather than the party seeking adjudication."  *Time Warner Entm't Advance/Newhouse P'ship v. Town of Landis*, 228 N.C. App. 510, 515, 747

---

[4] Soma has not attached the EPA as an exhibit to the Amended Complaint.

S.E.2d 610, 614 (2013) (citations and quotation marks omitted). For a justiciable controversy to exist, there must be "an actual controversy between parties having adverse interests in the matter in dispute." *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984). The "[m]ere apprehension or the mere threat of an action or a suit is not enough." *Id*. at 234, 316 S.E.2d at 62. "Thus the Declaratory Judgment Act does not 'require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise.'" *Id*. (quoting *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 204, 22 S.E.2d 450, 453 (1942).

40. Here, Soma has pleaded that "an existing and actual controversy exists as to whether Dalamagas has any – or has had any since the EPA – ownership interest in Soma India." (Am. Compl. ¶ 46.) Soma has failed to allege, however, that its declaratory judgment claim addresses an actual case or controversy existing between *Soma* and any of the defendants. To the contrary, in seeking a declaration concerning Dalamagas's ownership interests in Soma and Soma India, Soma's claim is premised on the ownership dispute between Dalamagas and Leonidas, not Soma.

41. Accordingly, the Court concludes that Soma's declaratory judgment claim concerning Dalamagas's ownership interest in Soma and Soma India should be dismissed for the additional reason that Soma has failed to allege that an actual controversy exists between Soma and Defendants concerning the subject matter of the claim for declaratory relief. *See, e.g.*, *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 584, 347 S.E.2d 25, 29 (1986) ("[I]n order for a court to have

subject matter jurisdiction to render a declaratory judgment, an actual controversy must exist between the parties . . . .").

42. Furthermore, even if Soma could establish subject matter jurisdiction for its claim, a court "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding." N.C. Gen. Stat. § 1-257. "The interests of judicial economy and efficiency weigh in favor of suits that will settle all of the issues in the underlying controversy[;]" "[t]his is especially so where a separate suit has been filed, or is likely to be filed, that will more fully encompass the scope of the entire controversy." *Coca-Cola Bottling*, 141 N.C. App. at 578, 541 S.E.2d at 163 (dismissing declaratory judgment action where it would only resolve "one small piece of the larger underlying controversy").

43. Therefore, courts must carefully consider whether the declaratory proceeding serves "a useful purpose where the plaintiff seeks to clarify its legal rights in order to prevent the accrual of damages, or seeks to litigate a controversy where the real plaintiff in the controversy has either failed to file suit, or has delayed in filing." *Id.* at 578, 541 S.E.2d at 164. In short, "[a party] in a pending lawsuit should not be permitted to bring a declaratory suit involving overlapping issues in a different jurisdiction as a strategic means of obtaining a more preferable forum." *Id.* at 579, 541 S.E.2d at 164.

44. Here, litigation over the enforceability of the EPA between the natural plaintiff and defendant—Dalamagas and Leonidas—was filed prior to this action

and is currently pending in another forum, the United States District Court for the District of Connecticut. Complaint, *Dalamagas v. Leonidas*, No. 3:16-cv-00638-AWT (D. Conn. Apr. 24, 2016), ECF No. 1 (the "Connecticut Federal Court Action"). (Dalamagas and Denova's Mem. Sup. Mot Dismiss Ex. B.) A review of the Amended Complaint in this action and the Complaint in the Connecticut Federal Court Action makes plain that Soma seeks a declaratory judgment in this Court on the same ultimate issue—whether the EPA is enforceable between the parties—that has been raised for determination in the previously filed Connecticut Federal Court Action between the actual parties to the EPA. Further, it is clear to the Court that the issues Soma seeks to resolve through a declaratory judgment in this Court will not resolve the entire controversy among the parties.

45. Soma's prosecution of its declaratory judgment action in this forum also appears to be part of a broader, previously launched battle among these parties and Leonidas over the proper venue to resolve this dispute. In light of the prior litigation between and among these parties and Leonidas in Connecticut and India, the Court does not find maintenance of the declaratory judgment in this forum consistent with the interests of judicial economy and efficiency. *See, e.g.*, *Coca-Cola Bottling*, 141 N.C. App. at 580, 541 S.E.2d at 164–65 (ordering dismissal where allowing "[declaratory judgment action] to proceed would conflict with the interests of judicial economy and efficiency").

46.     Thus, for these separate and independent reasons, the Court, in the exercise of its discretion, concludes that Soma's declaratory judgment claim should be dismissed.

B.  Choice of Law

47.     North Carolina courts follow the traditional conflict of laws rule for matters affecting substantial rights of the parties—lex loci, the law of the situs of the claim.  *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988) (citing *Charnock v. Taylor*, 223 N.C. 360, 361, 26 S.E.2d 911, 913 (1943)).[5]

48.     "For actions sounding in tort, the state where the injury occurred is considered the situs of the claim."  *Id.* at 335, 368 S.E.2d at 854; *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722 (2010) ("Our Supreme Court has made clear that lex loci delicti . . . is the appropriate choice of law test to apply to tort claims.").  "The plaintiff's injury is considered to be sustained in the state 'where the last act occurred giving rise to [the] injury.'"  *Harco Nat'l Ins. Co.*, 206 N.C. App. at 694–95, 698 S.E.2d at 724 (alteration in original) (quoting *United Virginia Bank v. Air-Lift Assocs.*, 79 N.C. App. 315, 321, 339 S.E.2d 90, 94 (1986)) (holding that the trial court "incorrectly applied the lex loci test when it focused its injury analysis on where the alleged negligent misrepresentations took place" when "plaintiff had not yet sustained any injury").

---

[5] The parties agree that the lex loci test rather than the "most significant relationship" test should determine the applicable law for each claim, including Soma's claim under N.C. Gen. Stat. § 75-1.1.  This Court (Gale, J.) has previously concluded that the North Carolina Supreme Court will likely apply the lexi loci test to section 75-1.1 claims based on *Boudreau*, in which the Court rejected the modern trend towards the "most significant relationship" test.  *See Associated Packaging, Inc. v. Jackson Paper Mfg. Co.*, 2012 NCBC LEXIS 13, at *13–18 (N.C. Super. Ct. Mar. 1, 2012).

Because North Carolina does not recognize a bright line rule that a plaintiff suffers its injury at its principal place of business, our courts must analyze and determine where a plaintiff in fact sustained its alleged injury to determine choice of law. *Id.* at 697, 698 S.E.2d at 725–26.

49. Soma contends that the lex loci test permits the Court to consider only conduct within the United States to determine where the last act giving rise to the alleged injury occurred. (Pl.'s Mem. Resp. Appl. Law 2–3.) Soma argues that the last acts in this country giving rise to its claims were "the issuance by Denova, a North Carolina company, of the marked-up invoices requiring pre-payment for medical equipment shipped from North Carolina and Denova's receipt of such payments" in North Carolina. (Pl.'s Mem. Resp. Appl. Law 3.) Thus, according to Soma, North Carolina law should apply to all claims.

50. Desai, however, does not assert that the lex loci test contains a territorial restriction and argues that because the last act giving rise to Soma's alleged injury occurred in India, the law of India should apply to each of Soma's claims. (Desai's Mem. Regarding Appl. Law 2).[6]

51. As an initial matter, and contrary to Soma's contentions, the location of the last act giving rise to a plaintiff's alleged injury under the lex loci test is not restricted to conduct in the United States. *See, e.g.*, *Baloco v. Drummond Co.*, 640

---

[6] More specifically, Desai argues that (i) the last act allegedly giving rise to liability for Soma's tortious interference with contract claim was Soma India's ongoing refusal to pay Soma in India, and (ii) the last act allegedly giving rise to liability for Soma's claims for tortious interference with business expectations, fraud, and statutory and common law unfair competition was Defendants' improper assertion of control of Soma India in India. (Desai's Resp. to Pl.'s Suppl. Br. Choice of Law 2–3.)

F.3d 1338, 1349 n.12 (11th Cir. 2011) (observing that Colombian law would apply under lex loci test); *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 190 (2d. Cir. 2009) (observing that Nigerian law would apply under lex loci test); *Baker v. Booz Allen Hamilton, Inc.*, 358 F. App'x 476, 480–81(4th Cir. 2009) (observing that Kyrgyzstan law would apply under lex loci test); *see also* N.C. R. Civ. P. 44.1.

52. Turning next to Soma's specific claims, Soma's claims for tortious interference with contract and business expectations is based on its allegations that (i) Defendants "prevent[ed] the payment of amounts owed to Soma" by Soma India of $550,040.05, (Am. Compl. ¶¶19, 51), and (ii) Defendants "tortiously interfered with Soma's business relationship . . . and expectations with Soma India and in India," (Am. Compl. ¶ 54), both of which Soma alleges resulted in "damages [to Soma] including lost profits and loss of future profits," (Am. Compl. ¶ 57).

53. As to the first allegation, Soma contends that its alleged injury occurred when Denova sent marked-up invoices to Soma India from North Carolina and when Denova received payment from Soma India in North Carolina. As alleged in the Amended Complaint, however, Soma's actual alleged injury occurred when, at Denova and Dalamagas's urging, Soma India seized the Equipment for its own use and refused to pay Soma's invoice for $550,040.05, which occurred in India. *See Harco Nat'l Ins. Co.*, 206 N.C. App. at 698, 698 S.E.2d at 726 (holding that plaintiff's injury occurred in North Carolina when plaintiff involuntarily parted with funds located in North Carolina and was denied repayment). As to Soma's second allegation, the Amended Complaint makes clear that Defendants' alleged

conduct caused Soma India to cease doing business with Soma in India. That Defendants initiated their alleged conduct in North Carolina does not change that Soma was actually injured in India. *See Lloyd v. Carnation Co.*, 61 N.C. App. 381, 387–89, 301 S.E.2d 414, 418 (1983) (holding last act giving rise to tortious interference claim occurred in state where plaintiff's contracting party stopped contract performance and harmed plaintiff's business). As a result, the Court concludes that under the lex loci test, the law of India applies to Plaintiff's tortious interference claims.

54. Soma's fraud claim rests on its contention that Defendants "intentionally misrepresented that Dalamagas had voting rights," (Am. Compl. ¶ 65), at Soma India's shareholder meeting in India, (Am. Compl. ¶ 35). Soma contends that based on that misrepresentation, Dalamagas and Denova were able to obtain control of Soma India and then use that control to both "interfer[e] with Soma's rights to receive payment from Soma India and Soma's expected business affairs in India," (Am. Compl. ¶ 66), and "engage in self-dealing by diverting Soma opportunities [in India] for their own gain," (Am. Compl. ¶ 67). As such, the Court concludes that the last act causing Soma's alleged injury on its fraud claim was, again, Soma India's discontinuation of equipment purchases from Soma in India, requiring the application of Indian law to that claim.

55. Soma's statutory and common law claims for unfair competition assert the same alleged injury as Soma's tortious interference and fraud claims. As such, the

Court concludes that the law of India applies to those claims as well. (Am. Compl. ¶¶ 59–63.)

C. Tortious Interference and Unfair Competition Claims

56. Generally, a party asserting that foreign law applies must not only plead that foreign law applies but also prove the foreign law so that the court may apply that law to the case before it. *Speedway Motorsports Int'l, Ltd. v. Bronwen Energy Trading, Ltd.*, 2009 NCBC LEXIS 17, at *9 (N.C. Super. Ct. Feb. 18, 2009) (citing *Bel-Ray Co., Inc. v. Chemrite Ltd.,* 181 F.3d 435, 440–41 (3d Cir. 1999)) (looking to federal cases for the interpretation of the nearly identical Federal Rule of Civil Procedure 44.1); *Baker*, 358 F. App'x at 481 ("[T]he party claiming foreign law applies carries both the burden of raising the issue that foreign law may apply in an action and the burden of proving foreign law to enable the district court to apply it in a particular case.").[7]

57. The trial court has the authority to research foreign law on its own under Rule 44.1 and "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under Chapter 8 of the General Statutes or State law[,]" N.C. R. Civ. P. 44.1, but the Rule "'imposes no duty upon [the court] to do so.'" *Speedway Motorsports Int'l*, 2009 NCBC LEXIS 17, at *9 (quoting *Bel-Ray Co., Inc.,* 181 F.3d at 440). Therefore, "[w]here parties fail to satisfy either burden [*i.e.*, of raising and proving foreign law] the court will

---

[7] Because "[t]he North Carolina Rules of Civil Procedure are, for the most part, verbatim recitations of the federal rules[,]" "[d]ecisions under the federal rules are . . . pertinent for guidance and enlightenment in developing the philosophy of the North Carolina rules." *Turner v. Duke Univ.*, 325 N.C. 152, 164, 381 S.E.2d 706, 713 (1989).

ordinarily apply the forum's law." *Id.* at *10 (quoting *Bel-Ray Co., Inc.,* 181 F.3d at 441); *see also Loebig v. Larucci,* 572 F.2d 81, 85 (2d. Cir 1978) ("When there is no presumption that New York law is the same as foreign law and no evidence has been presented as to foreign law, New York courts have decided the cases in accordance with New York law.").

58.   Here, Desai has met his burden of proving Indian law concerning tortious interference with contract, tortious interference with business expectations, and common law and statutory unfair competition by citing federal cases holding that the law of India does not provide similar bases for relief.  (Desai's Resp. to Pl.'s Suppl. Br. Choice of Law 4); *see Centauro Liquid Opportunities Master Fund, L.P. v. Bazzoni,* No. 15 CV 9003-LTS-SN, 2016 U.S. Dist. LEXIS 136024, at *12 (S.D.N.Y. Sept. 30, 2016) (relying on other federal court decisions as a relevant source of foreign law).

59.   Specifically, in *MM Global Services, Inc. v. Dow Chemical Co.*, the federal district court in Connecticut relied upon an affidavit submitted under Rule 44.1 by a member of the Supreme Court Bar Association of India and the Delhi High Court Bar Association to dismiss claims under Indian law based on the court's conclusion that "[India] does not recognize a cause of action for tortious interference with business expectancies, tortious interference with contractual relationships or unfair competition."  283 F. Supp. 2d 689, 692, 704 n.8 (D. Conn. 2003); *see* Som Mandal Aff., *MM Global Servs. v. Dow Chem. Co.*, No. 3:02cv 1107 (AVC) (D. Conn. Nov. 20, 2002), ECF No. 51.  The district court also dismissed plaintiff's statutory unfair

competition claim based on the court's conclusion that "India does not have a similar basis for relief [for violations of Connecticut Unfair Trade Practices Act.]" *MM Global Servs.*, 283 F. Supp. 2d at 692. Likewise, in *Glenwood Systems, LLC v. Med-Pro Ideal Solutions, Inc.*, the Second Circuit affirmed the dismissal of a plaintiff's claims for tortious interference with business expectancies and for violations of Connecticut's Unfair Trade Practices Act because those claims are not recognized under the law of India. Nos. 10-2101-cv(L), 10-2592-cv(XAP), 2011 U.S. App. LEXIS 19129, at *6 (2d Cir. Sept. 16, 2011) (unpublished) (citing *MM Global Servs.*, 283 F. Supp. 2d at 704).

60. Based on these federal decisions and the affidavit testimony on which they rely, the Court concludes that Desai has satisfied his burden under Rule 44.1 to prove the law of India for purposes of this proceeding. Thus, the Court concludes that the law of India does not provide relief for claims of tortious interference with contract, tortious interference with business expectations, and common law unfair competition of the sort Soma has advanced here, requiring dismissal of those claims. In addition, because the relief afforded under section 75-1.1 is similar to the relief available under the Connecticut Unfair Trade Practices Act at issue in *MM Global Services*, *supra*, the Court concludes that Desai has satisfied his burden under Rule 44.1 to prove that the law of India does not have a similar basis for relief for violations of section 75-1.1, requiring dismissal of Soma's statutory unfair competition claim.

D. Fraud Claim

61.    Because no party has offered proof of the law of India as to Soma's fraud claim or its claims for various forms of equitable relief, the Court applies forum law (i.e., the law of North Carolina) to Plaintiff's remaining claims.  *Speedway Motorsports Int'l*, 2009 NCBC LEXIS 17, at *10.

62.    Defendants contend that Plaintiff's fraud claim must fail because Soma has failed to allege that the purportedly fraudulent statement supporting the claim (i) was made to Plaintiff, (ii) was intended to have been relied upon by Plaintiff, or (iii) was in fact relied upon by Plaintiff, (Desai's Mem. Supp. Mot. Dismiss 13; Dalamagas and Denova's Mem. Supp. Mot. Dismiss 5).  The Court agrees.

63.    To state a fraud claim under North Carolina law, a plaintiff must allege that a defendant made a "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party," *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974).

64.    "Actual reliance is demonstrated by evidence plaintiff acted or refrained from acting in a certain manner due to defendant's representations." *Pleasant Valley Promenade v. Lechmere, Inc.*, 120 N.C. App. 650, 663, 464 S.E.2d 47, 57 (1995) (citing *Libby Hill Seafood Rest., Inc. v. Owens*, 62 N.C. App. 695, 698, 303 S.E.2d 565, 568 (1983)).  Reliance on the false representation must also be justified or reasonable. *Id.*

65. Here, Soma alleges that at a shareholder meeting of Soma India on March 29, 2016, "Dalamagas fraudulently misrepresented that he continued to be a shareholder of Soma India," (Am. Compl. ¶ 36), and "that he own[ed] or control[led] one half of Soma's shares in Soma India," (Am. Compl. ¶ 41), in order "to improperly maintain control of Soma India, to benefit himself, Denova, and Desai," (Am. Compl. ¶ 38). Soma omits from its Amended Complaint, however, any allegation that Dalamagas made his alleged statements at the shareholder meeting to Soma, with an intent to deceive Soma, or that Soma in fact relied upon the alleged misrepresentations and acted or refrained from acting in some manner to its detriment. As a result, Soma's fraud claim is fatally deficient and must be dismissed. *See Calloway v. Wyatt*, 246 N.C. 129, 133, 97 S.E.2d 881, 884 (1957) ("A pleading setting up fraud must allege the facts relied upon to constitute fraud, and that the alleged false representation was made with intent to deceive plaintiff."); *Plasman v. Decca Furniture (USA), Inc.*, 2016 NCBC LEXIS 80, at *32 (N.C. Super. Ct. Oct. 21, 2016) (dismissing fraud claim because fraudulent misrepresentations were made to third parties and relied on by third parties—not plaintiff).

E. Plaintiff's Equitable Remedies

66. In light of the Court's conclusion that each of Soma's substantive claims for relief must be dismissed, the Court likewise concludes that each of the equitable remedies Soma seeks to redress Defendants' alleged wrongdoing—constructive trust, accounting, punitive damages, injunctive relief, and a declaratory judgment holding Dalamagas and Denova liable for each other's misconduct—must also be

dismissed. *See, e.g.*, *Roper v. Edwards*, 323 N.C. 461, 464, 373 S.E.2d 423, 424–25 (1988) ("[The] common, indispensable element . . . [for] a constructive trust is . . . some fraud, breach of duty or other wrongdoing by the holder of the property, or by one under whom he claims . . . ."); *Phillip & Jordan, Inc. v. Bostic*, 2009 NCBC LEXIS 3, at *13 (N.C. Super. Ct. June 2, 2009) ("[A]n alter ego claim is not in itself a claim for substantive relief, but rather a means to 'disregard the corporate entity as a distinct defendant and to hold the alter ego individuals liable on the obligations of the corporation.'"); *Wilmar, Inc. v. Liles*, 13 N.C. App. 71, 74, 185 S.E.2d 278, 280 (1971) ("[E]quitable relief will be granted only when legal relief is inadequate, and the party [seeking equitable relief] must . . . alleg[e] and establish[] facts which will warrant the equitable remedy.").

IV.

ALTERNATIVE MOTIONS TO STAY AND FOR VENUE

67. In light of the Court's dismissal of Soma's claims under Rule 12(b)(6), the Court concludes that both (i) Dalamagas and Denova's Alternative Motion to Stay and (ii) Dalamagas and Denova's Alternative Venue Motion should be denied as moot.

V.

PLAINTIFF'S MOTION TO AMEND

68. Soma filed its Motion to Amend as an alternative motion seeking leave to amend should the Court conclude that the Amended Complaint should be dismissed in any respect. Soma did not include proposed amendments with its alternative

motion, and, in essence, asks that any dismissal of its claims be entered without prejudice to permit re-pleading.

69. The Court agrees with Plaintiff as to Soma's claim for declaratory judgment concerning Dalamagas's ownership interests in Soma and Soma India, which is dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). A dismissal under Rule 12(b)(1), unlike a dismissal under Rule 12(b)(6), is not a dismissal on the merits. *Cline v. Teich*, 92 N.C. App. 257, 264, 374 S.E.2d 462, 466 (1988). Therefore, a dismissal under Rule 12(b)(1) "'is not given res judicata effect,'" *id*. (citation omitted), and thus it is appropriate that the dismissal of Soma's declaratory judgment claim be entered without prejudice.

70. As to Soma's remaining claims, however, the Court concludes that the grounds for the Court's dismissal under Rule 12(b)(6) of those claims compels that the dismissal be made with prejudice. First, an opportunity to re-plead will not salvage Plaintiff's claims for tortious interference with contract, tortious interference with business relations, and common law and statutory unfair competition because the law of India applies to, and does not recognize, those claims. Similarly, Plaintiff's fraud claim is fatally deficient in multiple respects that cannot be cured without inconsistently and fundamentally changing the fraud that has been alleged. Accordingly, the Court concludes that these claims should be dismissed with prejudice and that Plaintiff's Motion to Amend should be denied. *See generally* N.C. R. Civ. P. 41(b); *Cline*, 92 N.C. App. at 264, 374 S.E.2d at 466 ("Rule 41(b) of the North Carolina Rules of Civil Procedure provides the basis for

concluding that dismissal under Rule 12(b)(6) is an adjudication on the merits, and therefore that 12(b)(6) dismissal bars subsequent relitigation of the same claim."); *Mosley & Mosley Builders, Inc. v. Landin, Ltd.*, 97 N.C. App. 511, 516, 389 S.E.2d 576, 578–79 (1990) (holding that futility of amendment is an appropriate reason justifying denial of leave to amend).

VI.

CONCLUSION

71. **WHEREFORE**, the Court, for the reasons stated herein, hereby **ORDERS** as follows:

    a. The Court **GRANTS** Desai's 12(b)(6) Motion and Dalamagas and Denova's 12(b)(6) Motion, **DISMISSES** Plaintiff's claim for declaratory judgment concerning Dalamagas's ownership interests in Soma and Soma India without prejudice, and **DISMISSES** Plaintiff's remaining claims with prejudice.

    b. The Court **DENIES as moot** (i) the Alternative Stay Motion and (ii) the Alternative Venue Motion.

    c. The Court **DENIES** the Motion to Amend.

    **SO ORDERED**, this the 11th day of May, 2017.

/s/ Louis A. Bledsoe, III
Louis A. Bledsoe, III
Special Superior Court Judge
  for Complex Business Cases